UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
MCI LLC, d/b/a Verizon Business,:
and Sprint Communications      :
Company LP,                    :
                               :
            Plaintiffs,        :
                               :      06 Civ. 4412 (THK)
                               :
     -against-                 :
                               :   **MEMORANDUM OPINION AND ORDER**
                               :
RUTGERS CASUALTY INSURANCE      :
     COMPANY,                  :
                               :
            Defendant.         :
                               :
-------------------------------X

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

This action arises from a July 2, 2003 incident in which Pelcrete Construction, Inc. ("Pelcrete") severed two underground fiber-optic telecommunication cables in the Bronx, New York. Plaintiffs MCI LLC, d/b/a Verizon Business and Sprint Communications Company, L.P. ("Plaintiffs"),[1] the owner and lessee of the cables respectively, sued Pelcrete on September 15, 2004, alleging trespass and negligence. Pelcrete failed to respond to the Complaint, and, on August 18, 2005, the court (Mukasey, J.) granted Plaintiffs' motion for entry of default judgment against Pelcrete. An inquest on damages was held, and, on May 8, 2006, the court awarded Verizon Business $1,421,648.86, and Sprint

---

[1] MCI WORLDCOM Network Services, Inc. was the original named Plaintiff along with Sprint. MCI WORLDCOM Network Services, Inc. was merged into Verizon Business on January 6, 2006. (See Plaintiffs' Statement of Material Facts as to Which There is No Genuine Issue, filed Dec. 5, 2006 ("Pls.' 56.1 Stmt."), ¶ 1.)

$591,615.88, as well as prejudgment and post-judgment interest. See MCI Worldcom Network Servs., Inc., Sprint Commc'ns Co., No. 04 Civ. 7378 (MBM), 2006 WL 1388490, at *1 (S.D.N.Y. May 8, 2006).

Plaintiffs subsequently brought the instant action, pursuant to New York Insurance Law §§ 3420(a)(2) and 3420(b)(1), against Pelcrete's insurer, Defendant Rutgers Casualty Insurance Company ("Rutgers"), for the amount of the Pelcrete judgment, up to the $1,000,000 limit of coverage in Pelcrete's insurance policy with Rutgers.[2]   The Court's jurisdiction is based on the parties' diversity of citizenship, pursuant to 28 U.S.C. § 1332.

Presently before the Court are the parties' cross-motions for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiffs also have moved to strike, in whole or in part, several of Rutgers' submissions. (See Plaintiffs' Motion to Strike Portions of Defendant's Statement of Material Facts, filed Mar. 30, 2007; Plaintiffs' Motion to Strike Portions of Defendant's Summary Judgment Affidavits, filed Mar. 30, 2007; Plaintiffs' Motion to Strike Certain of Defendant's Summary Judgment Exhibits, filed Mar. 30, 2007; Plaintiffs' Motion to Strike Defendant's Reply Affirmation and/or For Leave to File a Sur-Reply, filed May 1, 2007.)[3]

_____

[2] The parties consented to trial before this Court pursuant to 28 U.S.C. § 636(c).

[3] Plaintiffs moved "(1) to strike certain portions of [Defendant's 56.1 Statement] on the grounds that they are not

2

For the following reasons, Plaintiffs' motion for summary judgment is granted and Defendant's motion is denied.

## FACTUAL BACKGROUND[4]

The Policy

In 2002, Rutgers issued Commercial General Liability Insurance

---

supported by admissible evidence, are irrelevant and/or contain legal arguments rather than statements of fact; (2) to strike portions of Rutgers' summary judgment affidavits on the grounds they do not affirmatively show they are based on personal knowledge, contain inadmissible hearsay, contain legal arguments, are inadmissable under the parol evidence rule, and/or contradict the affiants' prior deposition testimony; and (3) to strike certain of Rutgers' summary judgment exhibits on the grounds they are not properly authenticated, are inadmissable hearsay, and/or are irrelevant . . . ." (See Notice of Plaintiffs' Motion to Strike, filed Mar. 30, 2007.)

As to Rutgers' Reply submission, Plaintiffs argue that it is unclear whether the document, entitled an "Affirmation in Reply," is a memorandum of law, or an affidavit or declaration by Rutgers' counsel, Elio Di Berardino.  If it is a memoranda of law, Plaintiffs contend it should be stricken because it exceeds the Court's ten-page limit on reply memoranda by twenty-two pages. If it is an affidavit or declaration, Plaintiffs contend it should be stricken because it (1) does not indicate that Di Berardino has personal knowledge of the facts set forth in the Reply Affirmation, (2) contains inadmissible hearsay and parol evidence, and (3) includes legal arguments and conclusions not proper in affidavits or declarations in support of a motion for summary judgment.  (See Memorandum in Support of Plaintiffs' Motion to Strike Defendant's Reply Affirmation and/or For Leave to File a Sur-Reply, filed May 1, 2007, at 1-2.)

[4] Rutgers did not respond to Plaintiffs' 56.1 Statement in the manner prescribed by Local Rule 56.1(b), but instead submitted its own 56.1 Statement in support of its cross-motion for summary judgment. (Plaintiffs filed a response to Rutgers' 56.1 statement. (See Plaintiffs' Local Rule 56.1(b) Response to Defendant's Statement of Material Facts, filed Mar. 30, 2007.)) Accordingly, facts in Plaintiffs' 56.1 Statement supported by evidence in the record are deemed admitted.  See Local Civil Rule 56.1(c).

Policy No. SKP 3103105 10 to Pelcrete. The policy was effective from December 9, 2002 through December 9, 2003, and provided coverage of $1,000,000 per occurrence. (See Pls.' 56.1 Stmt. ¶ 6.)

The Incident

On July 2, 2003, Pelcrete, working under a construction contract with the New York City Housing Authority ("NYCHA"), was excavating with mechanized equipment at 1402 Webster Avenue in the Bronx. (See Pls.' 56.1 Stmt. ¶ 12.) During excavation, Pelcrete struck and severed two underground fiber-optic telecommunications cables belonging to Plaintiffs. See id.

Pelcrete never notified Rutgers of the occurrence. (See Rutgers' Statement of Material Facts As to Which There is No Genuine Issue of Fact, dated Mar. 8, 2007 ("Def.'s 56.1 Stmt."), ¶ 14.) On July 3, 2003, Plaintiffs attempted to obtain information concerning, among other things, the identity of Pelcrete's insurer. Pelcrete refused to provide this information. (See Pls.' 56.1 Stmt. ¶ 17.)

On September 15, 2004, Plaintiffs sued Pelcrete in this Court. On January 5, 2005, Plaintiffs issued a subpoena to the NYCHA seeking, inter alia, documents relating to any insurance policies issued to Pelcrete for the work on Webster Avenue in the Bronx "on or around May 2002 through August 2003." (See Pls.' 56.1 Stmt. ¶ 19; Subpoena to New York City Housing Authority, dated Jan. 5, 2005, attached as Exhibit ("Ex.") 13 to Pls.' 56.1 Stmt.) On

4

January 24, 2005, the NYCHA provided documents which included information indicating that Rutgers was Pelcrete's insurer. (<u>See</u> <u>id.</u> ¶ 20.)

On January 27, 2005, Plaintiffs' counsel had a telephone conversation with a representative of The Heffner Agency, Rutgers' insurance agent at that time. (<u>See</u> Pls.' 56.1 Stmt. ¶ 21.) In that conversation, Plaintiffs' counsel informed the agent of the July 2, 2003 occurrence and of the then-pending claims against Pelcrete. (<u>See</u> <u>id.</u>) On February 10, 2005, Plaintiffs provided written notice to Heffner and Rutgers of the occurrence and of the pendency of the Pelcrete suit. (<u>See</u> Letter of James J. Proszek, Esq. to The Heffner Agency and Rutgers Casualty Insurance Company, dated Feb. 10, 2005 ("Feb. 10 Ltr."), attached as Ex. 14 to Pls.' 56.1 Stmt.) Included in that notice were copies of the complaint and other pertinent pleadings and orders from the litigation. (<u>See</u> Pls.' 56.1 Stmt. ¶ 22.)

In separate letters to Pelcrete and to Plaintiffs' counsel, both dated February 16, 2005, Rutgers acknowledged receipt of the notice advising of the pending claims against Pelcrete. (<u>See</u> Letter of David Johnson to Pelcrete Construction, dated Feb. 16, 2005 ("Pelcrete Ltr."), attached as Ex. 15 to Pls.' 56.1 Stmt.; Letter of David Johnson to James J. Proszek, Esq., dated Feb. 16, 2005 ("Plaintiffs' Ltr."), attached as Ex. 16 to Pls.' 56.1 Stmt.) In the letter to Pelcrete, Rutgers stated:

It is important that you understand that any claim presented must fall within the parameters of what is covered under your policy with Rutgers Casualty. Hence, a claim made or suit brought for damages must flow from an occurrence to which this policy applies, otherwise there is no coverage.

It is the position of Rutgers Casualty Insurance Company that a condition of your policy has been breached. . . . [Y]ou are required to "see to it that we are notified as soon as practicable of an 'occurrence' or an offense, which may result in a claim." The "occurrence" outlined in the subject case occurred on July 2, 2003, yet Pelcrete Construction, Inc. never provided notice of this matter to Rutgers Casualty. . . . This is a clear violation and obvious breach of your duties under the Conditions Section of the subject policy.

As a result of this late notice, please understand Rutgers Casualty Insurance Company is constrained to deny coverage for the above-cited claim. This means that we will not be affording you coverage for this matter. This also means that we will neither appear on your behalf nor will we defend you against the lawsuit that has been filed in regard to this claim as our duty to defend has not be[en] triggered. Further, the Company will not indemnify you in the event damages are awarded in connection with this particular situation.

. . .

Last, any subject policy terms and/or conditions not referenced herein [are] not to be construed as a waiver of any of those terms and conditions. In fact, by sending this letter the Company expressly reserves the right to rely on those terms and conditions in deciding whether or not coverage is or is not afforded under the policy in the future.

(See Pelcrete Ltr., at 3-4.) In its letter to Plaintiffs, Rutgers

stated that, pursuant to New York Insurance Law Section 3420(d)[5],

---

[5] This section reads:

   If . . . an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor

6

Rutgers was informing Plaintiffs that it "has denied coverage to Pelcrete Construction, Inc. as well as any and all insured under this policy, on the grounds that coverage is excluded for this loss for the reasons set forth [in the February 16 letter to Pelcrete]." (See Plaintiffs' Ltr., at 1.)  A copy of the February 16 letter was attached to Plaintiffs' letter.  (See id.)

Rutgers did not defend Pelcrete in the underlying negligence action, and on May 8, 2006, the Court entered final judgment in favor of Plaintiffs against Pelcrete.  See MCI Worldcom Network Servs., 2006 WL 1388490, at *1.

Post-Judgment Proceedings

On May 10, 2006, pursuant to New York Insurance Law § 3420(a)(2)[6], Plaintiffs provided written notice of the judgment to

_____

vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

N.Y. Ins. L. § 3420(d).  Because the July 2003 incident did not result in death or bodily injury, this provision is not applicable to Plaintiffs' claims.

[6] That provision states, in relevant part:

[I]n case judgment against the insured . . . in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may, except during a stay or limited stay of execution against the insured on such judgment, be maintained

7

Pelcrete and to Rutgers.  (See Letters of James J. Proszek, Esq. to Pelcrete Construction and to Rutgers Casualty Insurance, dated May 10, 2006, attached as Exs. 17 and 18 to Pls.' 56.1 Stmt.)  After the passage of thirty days, Plaintiffs filed this action against Rutgers seeking judgment in the amount of $1,000,000, the limit of liability in Pelcrete's policy with Rutgers.  (See Complaint, filed June 12, 2006 ("Compl.").)

In its Answer, Rutgers asserted several affirmative defenses, including that recovery was barred: (1) "by [Plaintiffs'] independent failure to timely notify Rutgers of the alleged incident;" (2) by Pelcrete's "failure to time notify Rutgers of the incident;" (3) "by the material misrepresentation made by [Pelcrete] . . . regarding the true nature and scope of its work in connection to the work it performed at [the subject site]"; and (4) because the policy "only provided coverage . . . for interior painting work." (See Answer, dated Aug. 10, 2006, ¶¶ 15-28.)[7]

---

against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract.

N.Y. Ins. L. § 3420(a)(2).

[7] In response to Plaintiffs' motion for summary judgment, Rutgers affirmed that it is abandoning several affirmative defenses asserted in its Answer (e.g., lack of personal jurisdiction, failure to join a necessary party), on the grounds that "the Court has already made its findings regarding those issues or because the arguments raised do not involve issues upon which the resolution of this matter depends." (See Memorandum of Law in Support of Defendant's Cross Motion for Summary Judgment,

<u>    Cross-Motions for Summary Judgment</u>

Plaintiffs claim that Rutgers' February 16, 2005 letters to Pelcrete and to Plaintiffs disclaim coverage solely only on the ground of untimely notice by Pelcrete, a ground which does not apply to Plaintiffs.  Thus, Plaintiffs contend, Rutgers has waived any and all other affirmative defenses in this action.  (<u>See</u> Plaintiffs' Reply in Support of Plaintiffs' Motion for Summary Judgment and Response to Defendant's Cross-Motion for Summary Judgment, filed Mar. 30, 2007 ("Pls.' Reply"), at 6-10.) Alternatively, Plaintiffs argue, if the waiver doctrine does not apply, Defendants should be estopped from asserting any other defenses because "on reliance on Rutgers' failure to provide any basis for disclaiming coverage other than Pelcrete's failure to provide timely notice of the occurrence, [Plaintiffs] incurred the expense of continuing to prosecute the Pelcrete Suit and pursuing this action against Rutgers."  (<u>See</u> <u>id.</u> at 17.)

Rutgers counters that the waiver doctrine is inapplicable because it had no duty to provide a written disclaimer to Plaintiffs, and that, in any event, the February 2005 letters clearly disclaimed coverage to both Pelcrete and Plaintiffs on the ground of untimely notice.  (<u>See</u> Def.'s Mem., at 18-20.) Rutgers also contends that when it issued the policy to Pelcrete it relied

---

dated Mar. 9, 2007 ("Def.'s Mem."), at 33.)  Accordingly, those defenses need not be discussed here.

on false material facts given by Pelcrete in its application for insurance, which vitiated the policy <u>ab</u> <u>initio</u>, thus making irrelevant whether Rutgers issued a timely disclaimer or whether all of the grounds for disclaimer were initially asserted. (<u>See</u> <u>id.</u> at 23.) Defendant further argues that the Pelcrete policy does not cover excavation work, and that New York law does not require a carrier to disclaim if the loss falls outside the scope of coverage. (<u>See</u> <u>id.</u> at 29.)

**DISCUSSION**

I.   <u>Standard for Summary Judgment</u>

Summary judgment is appropriate only when the submissions of the parties, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986).

Once a properly supported motion for summary judgment has been made, the burden shifts to the nonmoving party to put forth "specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), or the essential elements of that party's case on which it bears the burden of proof at trial. <u>See</u> <u>Peck v. Pub. Serv. Mut. Ins. Co.</u>, 326 F.3d 330, 337 (2d Cir. 2003) (citing <u>Celotex</u>, 477 U.S. at 323, 106 S. Ct. at 2552).  A summary judgment

10

"opponent must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  The non-moving party may not rest on its pleadings and rely on mere allegations, denials, conclusory statements, or conjecture to create a genuine issue for trial. <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986); <u>Trinidad v. N.Y. City Dep't of Corr.</u>, 423 F. Supp. 2d 151, 161 (S.D.N.Y. 2006).  Moreover, "[a] party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial for in doing so he risks the possibility that there will be no trial." <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir. 1985) (quoting <u>Donnelly v. Guion</u>, 467 F.2d 290, 293 (2d Cir. 1972)).

In deciding a motion for summary judgment, a court may not resolve factual disputes, but merely determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson</u>, 477 U.S. at 250, 106 S. Ct. at 2511.  A court "must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party."  <u>McClellan v. Smith</u>, 439 F.3d 137, 144 (2d Cir. 2006) (citing <u>Anderson</u>, 477 U.S. at 255, 106 S. Ct. at 2513).

11

II.   <u>Defendant's Affirmative Defenses</u>

    A.   <u>Pelcrete's Failure to Timely Notify</u>

       The Court can easily dispense with Rutgers' first affirmative defense: that recovery by Plaintiffs is barred because Pelcrete failed to timely notify Rutgers of the July 2003 incident. New York insurance law allows an injured party to give independent notice to an insurer of an occurrence involving one of its insureds. <u>See</u> N.Y. Ins. Law § 3420(a)(3); <u>General Accident Ins. Group v. Cirucci</u>, 46 N.Y.2d 862, 863-64, 414 N.Y.S.2d 512, 514 (1979); <u>Seneca Ins. Co. v. W.S. Distrib., Inc.</u>, 40 A.D.3d 1068, 1069-70, 838 N.Y.S.2d 99, 101 (2d Dep't 2007); <u>Becker v. Colonial Co-op. Ins. Co.</u>, 24 A.D.3d 702, 704, 806 N.Y.S.2d 720, 723 (2d Dep't 2005); <u>Lauritano v. Am. Fid. Fire Ins. Co.</u>, 3 A.D.2d 564, 567-68, 162 N.Y.S.2d 553, 556 (1st Dep't 1957). Because an injured party enjoys an independent right to give notice and to recover from an insurer, recovery is not barred because of an insured's late notice of an occurrence covered by an insurance policy. <u>See</u> <u>Mount Vernon Fire Ins. Co. v. Harris</u>, 193 F. Supp. 2d 674, 678 (E.D.N.Y. 2002) ("Under New York law, even if the insured failed to give the insurance carrier timely notice of the accident, a third party claimant, . . . has an independent right to notify and seek recovery from an insurer, which is unaffected by any delay on the part of the insured.") (citing <u>General Accident Ins. Group</u>, 46 N.Y.2d at 863-64, 414 N.Y.S.2d at 514). Accordingly, Rutgers

cannot now assert Pelcrete's failure to report the incident as an affirmative defense against Plaintiffs' claim.

    B.   <u>Untimely Notice by Plaintiffs</u>

    Rutgers next contends that Plaintiffs should be denied recovery under the Pelcrete policy because Plaintiffs' notice of the incident was untimely.  Rutgers asserts that the February 16 letter to Plaintiffs, which denied coverage to "any and all insured under this policy, on the grounds that coverage is excluded for this loss for the reasons set forth [in the February 16 letter to Pelcrete]" (<u>see</u> Plaintiffs' Ltr.), "clearly encompasses both Plaintiffs" (<u>see</u> Def.'s Mem., at 20).  Rutgers further argues that it sent the February 16 letters to Plaintiffs as "an added measure of precaution to ensure that Plaintiffs understood that Rutgers was disclaiming coverage to 'any and all insureds'."  (<u>See</u> <u>id.</u> at 22.) Plaintiffs counter that there is no basis for Plaintiffs to be considered insureds under Pelcrete's policy, and that Rutgers' letters disclaimed only as to Pelcrete, on the grounds that Pelcrete provided late notice of the occurrence. (<u>See</u> Pls.' Reply, at 9-10.)

    For the following reasons, the Court rejects Rutgers' argument and finds that it (1) failed to disclaim on the basis of untimely notice by Plaintiffs, and (2) has waived the ground of untimely notice by Plaintiffs' as an affirmative defense in this action.

1.    The February 16 Letters Did Not Disclaim Coverage to
      Plaintiffs on the Ground of Untimely Notice

Rutgers' February 16 letters did not disclaim coverage to Plaintiffs on the basis of Plaintiffs' untimely notice.  First, David Johnson, the Rutgers claims adjuster who authored the February 16 letters, testified unequivocally that the letters disclaimed coverage solely on the basis of Pelcrete's failure to provide timely notice.

Q:          What was the basis of disclaiming coverage in this case, sir?

Johnson:  Late notice.

Q:          Late notice by whom?

Johnson:  By Pelcrete.

. . .

Q:          There is nothing in your letter that says Rutgers is denying this claim because MCI or Sprint failed to provide timely notice, is there?

Johnson:  No, I didn't mention specifically MCI or Sprint.

. . .

Q:          Coverage was disclaimed based on the fact that Pelcrete has failed to provide timely notice of the claim; is that correct?

Johnson:  Correct.
            . . .

Q:          Your letter of February 16, 2005 to [Plaintiffs' counsel], . . . , contains no additional basis for disclaiming coverage that was not set forth in your February 16 letter to Pelcrete, does it?

Johnson:  No.

14

Q:          In fact, states that you're disclaiming on the
            grounds set forth in the letter to Pelcrete; is
            that correct?

Johnson:    Yes.

. . .

Q:          You knew on February 16th of 2005 when you sent out
            your letter that MCI and Sprint had not provided
            notice to Rutgers in writing until February 10th of
            2005; is that correct?

Johnson:    Yes.

Q:          Yet you didn't say anything about it in your
            letter, sir?

Johnson:    I didn't say anything specifically about MCI or
            Sprint, no.

(See Deposition of David Johnson, dated Nov. 13, 2006 ("Johnson

Dep."), attached as Ex. 7 to Pls.' 56.1 Stmt., at 27, 30, 32, 40,

57.)[8]

----

[8] To the extent that Rutgers argues that a disclaimer based
upon Plaintiffs' notice should have been readily apparent from
the disclaimer based upon Pelcrete's inaction, such an argument
is rejected. Where an insured provides notice of an occurrence
before an injured party exercises its independent right to notify
an insurer of an occurrence, a disclaimer issued to the insured
for failure to satisfy the notice requirement of the policy will
be effective as against the injured party as well.  See Maldonado
v. C.L.-M.I. Properties, Inc., 39 A.D.3d 822, 823, 835 N.Y.S.2d
335, 336-37 (2d Dep't 2007); Massachusetts Bay Ins. Co. v. Flood,
128 A.D.2d 683, 684, 513 N.Y.S.2d 182, 183-84 (2d Dep't 1987)
("In this case, . . . it was the insureds who first notified the
carrier. Accordingly, any subsequent information provided by the
injured party was, for notice purposes, superfluous, because
there was already prima facie compliance with the contractual
notice requirements of the policy.") However, that is not what
occurred in this case. Although Pelcrete was bound by the
conditions of its policy with Rutgers to provide notification "as
soon as practicable of an 'occurrence' or an offense, which may
result in a claim," (see Commercial General Liability Coverage

Second, Rutgers' assertion that "[t]he terms 'any and all insureds' clearly encompasses both Plaintiffs" (see Def.'s Mem., at 20), is not supported by any competent evidence, and appears to be little more than a conclusion drawn by Rutgers' counsel.[9]  Indeed the policy itself, which contains an extensive, two-page definition of "insureds," includes no description that would remotely encompass an injured third-party. (See Commercial General Liability Coverage Form, at 11-12.)  Moreover, the letter addressed to

---

Form, Rutgers Policy, appended to Commercial Package Policy Number SKP 3103105 10, attached as Ex. 6 to Pls.' 56.1 Stmt., at 13), it failed to provide such notice.  Instead, notice was provided by Plaintiffs.  Plaintiffs had a duty under New York law, in exercising their notification rights under Section 3420(a)(3), to "act[] diligently in attempting to ascertain the identity of [Rutgers], and thereafter expeditiously notif[y] [Rutgers]" of their claims against Pelcrete. See Seneca Ins. Co., 40 A.D.3d at 1070, 838 N.Y.S.2d at 101; see also Steinberg v. Hermitage Ins. Co., 26 A.D.3d 426, 428, 809 N.Y.S.2d 569, 572 (2d Dep't 2006) (citing General Accident Ins. Group, 46 N.Y.2d at 863-64, 414 N.Y.S.2d at 514)).  It is not necessary to determine whether Plaintiffs gave untimely notice of the July 2003 incident (which, if true, would have been a valid ground for disclaiming coverage).  What is dispositive is that Rutgers did not object, in either the letter to Pelcrete or the letter to Plaintiffs, to the promptness of Plaintiffs' efforts in identifying and notifying Rutgers of their claims.

[9] For example, Rutgers asserts that "[c]ounsel for Plaintiffs is fully aware that as Plaintiffs are claiming under Pelcrete's policy, they are deemed insureds pursuant to their private right of action [pursuant to Insurance Law § 3240(a)(2)]. That is the reason they are subject to the same terms and conditions as Pelcrete." (See Def.'s Mem., at 19 n. 32.) However, Rutgers provides no case-law to support its assertion that injured parties such as Plaintiffs are considered "insureds" under Section 3420, and Rutgers overlooks the fact that, as discussed above, Section 3420 specifically excludes injured parties from an insured party's notice requirements.

Pelcrete identifies Plaintiffs not as "insured[s]," but rather "claimant[s]/plaintiff[s]."  (See Pelcrete Ltr., at 1.)

Finally, Rutgers itself appears to have abandoned the argument that Plaintiffs were insureds under the contract.  In its Reply, Rutgers argues that "the reason that Rutgers did not specifically refer to Plaintiffs in its letter directed to Plaintiffs' counsel is because at the point at which Plaintiffs notified Rutgers of the claim, Plaintiffs were neither insureds nor injured parties seeking to pursue their right of private action." (Affirmation in Reply in Support of Rutgers Casualty Insurance Company's Cross Motion for Summary Judgment, dated Mar. 9, 2007 ("Reply Aff."), ¶ 26.)

> 2.   Waiver Doctrine is Applicable to the February 16 Disclaimers

Having determined that Rutgers did not assert a notification defense against Plaintiffs in the February 16 letters, the next issue to be resolved is whether Rutgers waived a notification defense with respect to Plaintiffs' claim in this action.

Under New York insurance law, waiver is defined as "a voluntary and intentional relinquishment of a known right."  State of N.Y. v. AMRO Realty Corp., 936 F.2d 1420, 1431 (2d Cir. 1991) (quoting Albert J. Schiff Assoc., Inc. v. Flack, 51 N.Y.2d 692, 698, 435 N.Y.S.2d 972, 975 (1980)); Westport Res. Inv. Servs., Inc. v. Chubb Custom Ins. Co., No. 02 Civ. 3096 (TPG), 2003 WL 22966305, at *5 (S.D.N.Y. Dec. 16, 2003) (same), aff'd, 110 Fed. Appx. 172 (2d Cir. 2004).  "[D]irect or circumstantial proof that the insurer

17

intended to abandon [a] defense," is the touchstone of waiver.  See
AMRO Realty, 936 F.2d at 1431 (quoting Albert J. Schiff Assoc., 51
N.Y.2d at 698, 435 N.Y.S.2d at 975).  "An irrevocable waiver may be
found where the words and acts of the insurer reasonably justify
the conclusion that with full knowledge of all the facts it
intended to abandon or not to insist upon the particular defense
afterward relied upon . . . ." Id. (internal quotation marks and
citation omitted).  In instances where the insurer possesses actual
or constructive knowledge of the circumstances regarding a
potential defense, yet asserts only other defenses, New York law
deems the insurer, as a matter of law, to have intended to waive
the unasserted defense.  See id. (citing Luria Bros. & Co. v.
Alliance Assurance Co., 780 F.2d 1082, 1090-91 (2d Cir. 1986)).

     The gravamen of Rutgers' opposition to Plaintiffs' waiver
argument is that it had no duty to disclaim coverage to Plaintiffs,
thus the February 16 letters cannot be interpreted as a waiver of
a late notice, or any other, defense.  (See Def.'s Mem., at 18-23
("[I]n the case at bar, Plaintiffs were not even entitled to [] a
letter of disclaimer. [The February 16 letter] served as an extra
precaution . . . .").) Rutgers seems to contend that the waiver
doctrine applies only when an insurer is statutorily required to
disclaim coverage to an injured party, and conversely, that when an
insurer is not required by statute to disclaim coverage to an
injured party, any grounds not raised in a disclaimer cannot be

18

deemed waived.

Rutgers cites no case law in support of this argument, but instead relies heavily on cases involving waiver under Section 3420(d), which requires an insurer to issue a timely written disclaimer when notified of an accident involving its insured that resulted in death or bodily injury.[10]  Because Section 3420(d) is not applicable to this case, see Brown v. State Farm Ins. Co., 237 A.D.2d 476, 477, 655 N.Y.S.2d 104, 105 (2d Dep't 1997) (noting that Insurance Law § 3420(d) does not apply to property insurance), Rutgers argues, there was no duty to disclaim, and thus no defenses were waived.

This argument is unpersuasive.  While Rutgers is correct that it was not required to issue a written disclaimer to Plaintiffs pursuant to Section 3420(d), it does not follow that the waiver doctrine does not apply to the written disclaimer that it did send.[11]  The waiver doctrine is not limited to disclaimers issued

_____

[10] As explained by the New York Court of Appeals in Zappone v. Home Ins. Co., 55 N.Y.2d 131, 447 N.Y.S.2d 911 (1982), Section 3420(d) "was enacted to avoid prejudice to the insured, [and] the injured claimant . . . [who] could be harmed by delay in learning of the carrier's position."  55 N.Y.2d at 137, 447 N.Y.S.2d at 915.  The Zappone court held that where a policy covers the accident at issue, if a carrier wishes to disclaim coverage on the basis of the insured's breach of the policy, or a policy exclusion, the insurer must disclaim pursuant to Section 3420(d).  See id. at 136-37, 447 N.Y.S.2d at 914.

[11] There is no doubt that the February 16 letters to Plaintiffs' counsel were intended as disclaimers. First, Rutgers stated in the letter to Plaintiffs that it was writing "in full compliance with its obligations under . . . 3420(d)," a provision

19

pursuant to Section 3420(d), see Allstate Ins. Co. v. Gross, 27 N.Y.S.2d 263, 269, 317 N.Y.S.2d 309, 313-14 (1970) ("Prior to [] enactment [of Section 3420(d)], attempts to disclaim could always be defeated by showing waiver or estoppel, the latter necessarily requiring prejudice . . . Indeed, these 'common law' defenses are not precluded, even when the statute is invoked"), and courts have considered the doctrine in considering disclaimers issued by carriers in cases not involving death or bodily injury, see e.g., H. S. Equities, Inc. v. Hartford Acc. and Indem. Co., 661 F.2d 264, 270-71 (2d Cir. 1981) (blanket brokers bond covering loss of property caused by the fraud or dishonesty of any of the insured's employees); N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc., Nos. 05 Civ. 4807 (SAS), 05 Civ. 5827 (SAS), 2007 WL

---

that, while not applicable to property claims, deals exclusively with disclaimers of liability with respect to insureds and injured parties.  Second, Johnson, the author of the letters, testified that he sent the February 16 letters to Plaintiffs' counsel "to notify him that we were disclaiming coverage as is required by the section of New York Insurance Law."  (See Johnson Dep. at 72.)  He further testified that it was his intent to communicate that "no coverage [was] afforded any insur[ed]," and that his understanding was that Plaintiffs' were standing in the shoes of the insured.  (See id.)  Lastly, Rutgers' brief describes the letters as disclaimers. (See, e.g., Def.'s Mem., at 1 ("The primary basis of the disclaimers was late notice by both the named insured and the Plaintiffs who were demanding coverage in the named insured's stead."); 20 ("The reason Rutgers quoted the insurance law section is to apprise Plaintiffs' counsel that it was indeed disclaiming coverage to Plaintiffs as well . . . ."); 32 ("Rutgers, via its letters of disclaimers, invited Plaintiffs to provide additional information regarding the Occurrence and to ask any relevant questions regarding its decision.").)

1222640, at *8 (S.D.N.Y. Apr. 24, 2007) (marine insurance policy to cover loss of goods); Crucible Materials Corp. v. Aetna Cas. & Sur. Co., 228 F. Supp. 2d 182, 195-96 (N.D.N.Y. 2001) (comprehensive general liability policies to cover costs for abatement of properties that were contaminated with hazardous wastes); Nesteqq Fed. Credit Union v. Cumis Ins. Soc'y, Inc., 87 F. Supp. 2d 144, 148 (N.D.N.Y. 2000) (bonds covering loss of property caused by the fraud or dishonesty of any of the insured's employees); Bear Stearns & Co. v. Underwriters at Lloyd's, No. 87 Civ. 5786 (MJL), 1991 WL 84558, at *2-3 (S.D.N.Y. May 14, 1991) (policy to cover loss of goods during transit or storage); Sokolowski on Behalf of M.M. & P. Pension Plan v. Aetna Life & Cas. Co., 670 F. Supp. 1199, 1203 n. 1 (S.D.N.Y. 1987) (breach of fiduciary responsibility insurance policy).

Also unpersuasive is Rutgers' argument that the February 16 letters cannot be read as waiving a late notice defense as to Plaintiffs because Rutgers did not intend to assert any defenses against Plaintiffs in the letters. In essence, Rutgers argues that it was unaware that Plaintiffs would seek recovery from Rutgers until the instant action was filed. (See Reply Aff. ¶ 22 ("Had Plaintiffs' counsel written back [after receiving the February 16 letters] and indicated to Rutgers that Plaintiffs would then pursue their right of private action, then Rutgers would have specifically written back and disclaimed coverage and denied liability to

Plaintiffs based upon their specific failure to timely notify Rutgers of the occurrence as well.").)   Accordingly, Rutgers contends, having asserted the late notice defense in its Verified Answer in this action, it timely asserted the late notice defense as to Plaintiffs. (See Reply Aff. ¶¶ 26, 42.)

A clear objective of New York insurance law is to provide a means of redress to a party injured by the acts of an individual who, while insured, fails to seek coverage under its insurance policy.  The law allows the injured party to preserve its rights under the policy by providing notice directly to the insurer, see N.Y. Ins. L. § 3420(a)(3), so long as the insured has not itself provided notice, see United States Liability Ins. Co. v. Albertell, No. 92 Civ. 301 (JSM), 1992 WL 380024, at *5 (S.D.N.Y. Dec. 7, 1992) ("When, as in the case at bar, the injured party does not provide notice, it is not asserting its independent right to bring suit against the insurer, or preserving its rights under the policy by giving notice.  Instead, it is rather relying upon the insured to give notice of the claim, and its rights vis-à-vis the insurer remain derivative.").  Thus, by giving Rutgers the only notice of the 2003 incident, Plaintiffs preserved their right to proceed directly against Rutgers pursuant to the terms of the policy; Plaintiffs' notice was a clear manifestation by Plaintiffs that they were not relying on Pelcrete to give notice of the occurrence

or Plaintiffs' claim.[12]

Rutgers' assertion, that Plaintiffs' objective of obtaining coverage under Pelcrete's policy was unknown until the instant action was filed, directly contradicts its initial position in its summary judgment motion, that the intent of Rutgers' February 16 letters was to inform Pelcrete as well as Plaintiffs that they should not look to Rutgers for insurance coverage. (See Def.'s Mem., at 1 ("The primary basis of the disclaimers was late notice by both the named insured and the Plaintiffs who were demanding coverage in the named insured's stead.").) Again, whether or not Plaintiffs' February 10 letter to Rutgers triggered a duty to disclaim, Rutgers decided to issue a disclaimer to Plaintiffs in response to the letter.  Rutgers cannot plausibly assert on one hand that the February 16 letters disclaimed on the basis of Plaintiffs' failure to give timely notice, and, on the other hand, that Rutgers was unaware that Plaintiffs were asserting a claim under the Pelcrete policy until they filed the instant action. Indeed, Rutgers' primary defense in this action is that the February 10 letter sent by Plaintiffs constituted a late notice of claim.  If, as Rutgers suggests, Plaintiffs did not assert a claim until they commenced the instant action, how could their notice of a claim in February 2005 have been untimely?

---

[12] The Court further notes that in the February 10 letter to Rutgers, Plaintiffs identified themselves as "[c]laimants" in the subject line of the letter.  (See Feb. 10 Ltr.)

23

3.   <u>Rutgers Has Waived a Late Notification Defense as to
     Plaintiffs</u>

While the question of whether an insurer has waived a late
notice defense is generally a question of fact, New York courts
have "found waiver as a matter of law where the insurer has
disclaimed on other grounds without mentioning late notice until a
later date," <u>see</u> <u>Marino v. New York Tel. Co.</u>, No. 88 Civ. 5817
(PKL), 1992 WL 212184, at *7 (S.D.N.Y. Aug. 24, 1992) (citing <u>AMRO
Realty</u>, 936 F.2d at 1431-1433), provided that the insurer had
knowledge of the "facts giving rise to the unasserted defense,"
<u>Luria Bros.</u>, 780 F.2d at 1090.   "The crucial issue in finding
waiver, then, is not what the [insurer] knew at the time of the
loss, but rather what they knew . . . , when they first explained
to plaintiffs their rejection of the claim." <u>Farr Man Coffee, Inc.
v. Chester</u>, No. 88 Civ. 1692 (DNE), 1993 WL 248799, at *35 (May 28,
1993), <u>aff'd</u>, 19 F.3d 9 (2d Cir. 1994).   In this case, on January
27, 2005, Plaintiffs' counsel spoke with a representative of The
Heffner Agency, Rutgers' agent at the time, and informed the agent
of the 2003 incident, the claims against Pelcrete, and the pendency
of the Pelcrete suit.   (See Pls.' 56.1 Stmt. ¶ 21.)   On February
10, 2005, Plaintiffs sent a letter to Rutgers containing notice of
the damage to their property resulting from Pelcrete's excavation
work, and the facts and circumstances surrounding the incident, and
informed Rutgers that they intended to file a motion for a default
judgment against Pelcrete. (<u>See</u> <u>id.</u> ¶ 22.)   Plaintiffs also

24

provided, with the February 10 letter, "copies of the complaint and other pertinent pleadings and orders from the Pelcrete Suit." (See id.)  Rutgers responded within a week with a disclaimer addressed to Pelcrete, and sent a copy to Plaintiffs with a cover letter indicating that coverage for the July 2003 incident was being denied for the reasons set forth in the Pelcrete letter. (See Pelcrete Ltr., at 4; Plaintiffs' Ltr.) The Pelcrete letter disclaimed coverage on the basis of Pelcrete's failure to give notice of the 2003 incident, but neither letter disclaimed on the basis of untimely notice by Plaintiffs.  Moreover, Rutgers never even suggested that it was concerned about the timing of Plaintiffs' notice until it filed an Answer in the instant action, nearly eighteen months after first learning of the incident and Plaintiffs' claim.

In General Accident Insurance Group v. Cirucci, 46 N.Y.2d 862, 863-64, 414 N.Y.S.2d 512, 514 (1979), an insurance carrier was first notified of an accident involving its insured by two injured parties, some two and a half years after the accident.  The insurance carrier sent a disclaimer letter to the injured parties stating, inter alia, that coverage was disclaimed because of the "insured's failure to report this accident to us." Id.  The New York Court of Appeals refused to extend that disclaimer to the injured parties, concluding that "[a]lthough, under the facts of this case a disclaimer might have been premised on the late notice

25

furnished by the third parties themselves to the insurer, since this ground was not raised in the letter of disclaimer, it may not be asserted now." See id.

The Court continued:

> Although an insurer may disclaim coverage for a valid reason the notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated. Absent such specific notice, a claimant might have difficulty assessing whether the insurer will be able to disclaim successfully. This uncertainty could prejudice the claimant's ability to ultimately obtain recovery. In addition, the insurer's responsibility to furnish notice of the specific ground on which the disclaimer is based is not unduly burdensome, the insurer being highly experienced and sophisticated in such matters.

Id.

The Court finds the reasoning of this case squarely on point and concludes that Rutgers' affirmative defense of untimely notice by Plaintiffs has been waived. See also Luria Bros., 780 F.2d at 1090 ("By failing to raise the nondisclosure defense until several years later, long after they originally had denied liability on another ground, the underwriters waived the defense."); Olin Corp. v. Ins. Co. of N. Am., No. 84 Civ. 1968 (TPG), 2006 WL 509779, at *3 (S.D.N.Y. Mar. 2, 2006) ("where, as here, an insurer actually asserts certain policy defenses, whether by disclaimer or reservation of rights, the insurer is deemed to have waived any other unasserted grounds for refusing coverage"); In re Balfour Maclaine Int'l Ltd., 873 F. Supp. 862, 871 (S.D.N.Y. 1995), aff'd, 85 F.3d 68 (2d Cir. 1996) ("even if an insurer does not have actual

knowledge of all the pertinent facts about a defense when it declines liability on other grounds, if it has sufficient information to put it on notice of the defense, the insurer has constructive knowledge, which is sufficient for waiver"); <u>Vacca v. State Farm Ins. Co.</u>, 15 A.D.3d 473, 474-75, 790 N.Y.S.2d 177, 178 (2d Dep't 2005) ("Although [insurer] had a basis upon which to disclaim coverage against [the injured party] based upon his inaction, under <u>General Accident Ins. Group v. Cirucci</u>, [], [the insurer's] disclaimer, to the extent it was based solely on the inaction of its own insureds, did not affect [the injured party]'s independent rights.").

At the time it received Plaintiffs' letter notifying Rutgers of their claims, Rutgers has sufficient knowledge to assert a late notice disclaimer as to Plaintiffs. Indeed, Rutgers does not even contend that it lacked knowledge that it gained by the time it filed its Answer in this action, some eighteen months later.

In sum, the Court concludes that, having sent Plaintiffs a disclaimer that did not question the timeliness of Plaintiffs' notice, after being apprised of the accident and Plaintiffs' claims against Pelcrete, Rutgers waived the affirmative defense of untimely notice by Plaintiffs. See Farr Man Coffee, 1993 WL 248799, at *37 ("The omissions in the [insurer's] initial letter of rejection, then, prove crucial to the defenses available to them.").

C.   <u>Material Misrepresentation</u>

Rutgers contends that, in its application for insurance, Pelcrete failed to reveal that its contract with the NYCHA involved excavation work, and instead represented that it would be engaged solely in painting, tiling, and masonry work. (<u>See</u> Def.'s Mem., at 24.) Rutgers contends that had it been aware of the true facts, it would not have issued the policy because its underwriting guidelines prohibit the issuance of policies to companies engaged in "excavation/foundation work." (<u>See</u> <u>id.</u> at 25.)  Accordingly, Rutgers argues, "any coverage that would have been available is vitiated from the onset" because of Pelcrete's misrepresentation. (<u>Id.</u> at 27.)  Plaintiffs counter that Rutgers has waived its right to disclaim on that ground because Pelcrete's purported misrepresentations were not included in Rutgers' February 16 letters as grounds for disclaiming coverage. (<u>See</u> Pls.' Reply, at 19.)

"Under New York law, a material misrepresentation in an application for insurance will render a policy issued pursuant to that application void <u>ab</u> <u>initio</u>." <u>Bazzicalupo v. Nationwide Ins. Co.</u>, No. 05 Civ. 5127 (MDF), 2006 WL 1310369, at *3-4 (S.D.N.Y. May 11, 2006) (citing <u>Christiania Gen. Ins. Corp. of New York v. Great Am. Ins. Co.</u>, 979 F.2d 268, 278 (2d Cir. 1992)); <u>see also</u> N.Y. Ins. L. § 3105.  However, an insurance company can be barred from asserting that a liability policy was void <u>ab</u> <u>initio</u> if it unduly

delays in raising the defense after denying liability on another ground.  See Luria Bros., 780 F.2d at 1090-91.

In Luria Brothers, the insurance company alleged that its insured had not disclosed the unseaworthy condition of its cargo ship in seeking liability and property coverage for a voyage from Chicago to New Jersey, and that the misrepresentation voided the policy.  The Second Circuit rejected the carrier's argument after determining that when "the underwriters here initially declined liability, they knew that the vessel had experienced severe fires in the holds with temperatures in excess of 1100 degrees fahrenheit, and had later sunk," and "had commissioned an earlier survey . . . which indicated that there had been extensive damages to the vessel from the fire . . . ."  Id. at 1090-91.  The court reasoned that because the underwriters had constructive knowledge of the ship's unseaworthiness, the company was under a duty to have disclaimed on that ground at the outset.  Id. (citing Gen. Accident Ins. Group, 46 N.Y.2d at 863-64, 414 N.Y.S.2d at 514).

The Court finds Luria Brothers to be controlling.  In the instant case, Plaintiffs' February 10 letter was sufficient to put Rutgers on constructive notice of a non-disclosure defense. Indeed, Rutgers' February 16 letter to Pelcrete repeated the critical facts, namely that Pelcrete was "excavating with mechanized equipment." (See Pelcrete Ltr., at 1.)  Rutgers thus was on notice that Pelcrete was engaged in activities different from

29

those stated in its application for insurance, and allegedly beyond
the scope of Rutgers' underwriting guidelines; accordingly, it was
on notice that there had likely been a material misrepresentation
in Pelcrete's application for coverage.  Indeed, Johnson testified
that any misrepresentation in Pelcrete's policy application would
have been made before he sent the February 16 letters, and that he
had access to the application before sending the letters.  (See
Johnson Dep. at 66-67.)[13]   Johnson also stated in an affidavit that
Rutgers has, in other cases, disclaimed coverage on the basis of
material misstatements of fact.  (See Affidavit of David Johnson,
dated Apr. 27, 2007, attached as Ex. A to Affirmation of Elio M. Di
Berardino in Opposition to Plaintiff's Motion to Strike, dated Apr.
27, 2007.)  As in Luria Brothers, Rutgers' disclaimer solely on the
basis of untimely notice waived a non-disclosure defense asserted

_____

[13]  Barry J. Goldstein, Rutgers' Corporate Secretary and
Treasurer, testified that Johnson "would have been aware that
[Rutgers] would not issue a policy if the insured had disclosed
they did excavation . . . ." (See Deposition of Barry J.
Goldstein, dated Nov. 13, 2006, attached as Ex. 8 to Pls.' 56.1
Stmt., at 32.)

When asked whether Johnson would have been expected, after
learning of the July 2003 occurrence, to have checked Pelcrete's
application to see if it had disclosed that it was doing
excavation work, Goldstein said: "I would assume that he wouldn't
bother, because he knows we wouldn't issue a policy if the person
had disclosed they did excavation.  Would it be a good practice
to get a copy of the application, probably so."  (See Goldstein
Dep. at 32.)

eighteen months later.[14]  See also Bear Stearns, 1991 WL 84558, at *2 ("By failing to raise the nondisclosure defense until several years later, long after they originally had denied liability on another ground, the underwriters waived the defense.").

D.   Outside Scope of Policy

Rutgers' final argument is that Plaintiffs are not entitled to Pelcrete's coverage because Pelcrete's excavation activities "fall outside the scope of the [] policy issued to Pelcrete." (Def.'s Mem., at 27-28.)   While apparently conceding that it did not specifically disclaim coverage in the February 16 letters on the grounds of non-coverage, Rutgers now asserts that under the New

---

[14] The Court recognizes that waiver cannot create coverage where no coverage exists.  See Albert J. Schiff Assoc., 51 N.Y.2d at 698, 435 N.Y.S.2d at 87 ("for the insured to extend its coverage to more than it originally bargained, it would have had to enter into a supplemental contract expanding the insuring clause or contracting the exceptions. However, this extension of coverage cannot be attained by waiver, which is a voluntary and intentional relinquishment of a known right"); Zappone, 55 N.Y.2d at 136, 447 N.Y.S.2d at 914 ("the Legislature did not intend by its use of the words 'deny coverage' to bring within the policy a liability incurred neither by the person insured nor in the vehicle insured, for to do so would be to impose liability upon the carrier for which no premium had ever been received by it . . . .").  As will be discussed later, Rutgers fails to create a triable issue of fact on whether Pelcrete's activities were outside the scope of its policy, and Zappone is inapposite to Rutgers' affirmative defense.  "Zappone was concerned with whether [Section 3420(d)], [a provision] designed to compel an insurer to respond promptly to claims (by construing silence as acceptance of liability), would apply where a claim is made on a nonexistent policy; it did not address the Luria Brothers issue of whether an insurer who affirmatively responds to a claim by asserting one ground for denial will be held to have waived other grounds," such as misrepresentation of fact in an application for insurance.  Bear Stearns, 1991 WL 84558, at *3.

York Court of Appeals' holding in <u>Zappone</u>, waiver cannot be used to create insurance coverage where none exists. See <u>Zappone</u>, 55 N.Y.2d at 136-38, 447 N.Y.S.2d at 915-16; <u>see also</u> <u>Empire Fire and Marine Ins. Co. v. ELRAC, Inc.</u>, No. 04 Civ. 10315 (GEL), 2006 WL 3734308, at *5 (S.D.N.Y. Dec. 18, 2006) (citing <u>Zappone</u> and noting that a timely disclaimer is not required when no coverage exists).

Plaintiffs counter that the incident with Pelcrete falls within the plain language of the policy, and that Rutgers is simply arguing that it would not have issued the policy had it known of Pelcrete's plan to engage in excavation work – a fact that, assuming its truth, does not mean that the policy does not cover the accident. (<u>See</u> Pls.' Reply, at 22.) Plaintiffs further argue that even if the policy does not cover property damage resulting from excavation activity, Rutgers has waived policy exclusion as a defense. (<u>See</u> <u>id.</u> at 23.)

<u>The Policy</u>

Commercial General Liability Insurance Policy No. SKP 3103105 10 provides for the payment of up to $1,000,000 for each occurrence under the policy. (<u>See</u> Commercial General Liability Policy Declaration Page, attached as Ex. 6 to Pls.' Mem.) The policy is comprised of the "[signed] declarations, common policy conditions, coverage declarations, [and] coverage form(s)." (<u>See</u> <u>id.</u>) Under the attached coverage form, the insurance provided is described as covering "'property damage' [] caused by an 'occurrence' that takes

place in the 'coverage territory' . . . during the policy period." (<u>See</u> Commercial General Liability Coverage Form, at 6.)

The policy provides, and Rutgers does not dispute, that the "coverage territory" includes the Bronx; an "occurrence" means an accident; and that "property damage" means "physical injury to tangible personal property, including all resulting loss of use of that property." (<u>See</u> Commercial General Liability Coverage Form, at 15-17.) The Rutgers underwriter who authored the February 16 letters testified that the Plaintiffs' cables are "property" and that Pelcrete's severance of the cables was "property damage" under the policy that occurred during the "policy period" and within the "coverage territory." (<u>See</u> Johnson Dep. at 23-25.) Rutgers contends, however, that the July 2003 incident is not covered by the policy because it involved excavation work, an activity "ineligible for coverage as expressed by Rutgers' underwriting guidelines." (<u>See</u> Def.'s Mem., at 30.) Therefore, according to Rutgers, its failure to argue lack of coverage cannot create coverage where it does not exist.

Rutgers' argument is misplaced. Rutgers does not argue that it did not issue a policy to Pelcrete, or that the policy was not in effect at the time of the incident. Rather, it contends that the policy did not cover excavation activities, not on the basis of a written policy exclusion, but pursuant to Rutgers' underwriting guidelines. Yet, the policy explicitly states that

it contains all of the agreements between Pelcrete and Rutgers.
(<u>See</u> Commercial General Liability Policy Declaration Page ("These
declarations together with the common policy conditions, coverage
declarations, coverage form(s) and form(s) endorsements, if any,
complete the above numbered policy.")   Rutgers therefore cannot
rely on its underwriting guidelines as a basis for withholding
coverage.   Moreover, assuming, <u>arguendo</u>, that under its
underwriting guidelines Rutgers would not have issued the policy
to Pelcrete had it known that Pelcrete would be performing
excavation work, it does not follow that Plaintiffs are attempting
to create coverage where none exists.[15]   Rutgers' underwriting
guidelines set standards for coverage eligibility.   They do not
define what is and what is not covered by the policy; such
limitations are contained in the terms of the policy and the
stated exclusions.   <u>See</u> <u>Steadfast Ins. Co. v. Strook & Strook &</u>
<u>Lavan</u>, 277 F. Supp. 2d 245, 251 (S.D.N.Y. 2003), <u>aff'd</u>, 108 Fed.
Appx. 663 (2d Cir. 2004) ("Courts must examine both the insuring

---

[15] This argument really goes to Rutgers' non-disclosure
defense, discussed in the previous section, which seeks to
establish that Pelcrete was never covered by the policy because
of misrepresentations made in its application for insurance.   The
fact that Rutgers would not have issued the policy had it known
that there would be excavation activity is relevant to whether
Pelcrete made a misrepresentation of material fact that would
vitiate the insurance contract <u>ab</u> <u>initio</u>. <u>See</u> <u>Christiania Gen.</u>
<u>Ins. Corp.</u>, 979 F.2d at 278 ("A fact is material so as to avoid
<u>ab</u> <u>initio</u> an insurance contract if, had it been revealed, the
insurer or reinsurer would either not have issued the policy or
would have only at a higher premium.") As discussed <u>supra</u>,
however, this defense has been waived.

agreement and the exclusion clauses to determine the scope of protection afforded by the policy.") (citing Albert J. Schiff Assoc., 51 N.Y.2d at 697, 435 N.Y.S.2d at 974) ("the combination of [the coverage "insuring agreement" and the exclusion clause], defines the scope of the protection afforded no more and no less").

Zappone holds that an insurer is not required to deny coverage when "the policy as written could not have covered the liability in question under any circumstances." 55 N.Y.2d at 134, 447 N.Y.S.2d at 913. However, to "negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies to the particular case." Cardinal v. Long Island Power Auth., 309 F. Supp. 2d 376, 391 (E.D.N.Y. 2004) (quoting Belt Painting Corp. v. TIG Ins. Co., 100 N.Y.2d 377, 383, 763 N.Y.S.2d 790, 792 (2003) (internal quotation marks and citation omitted)).

Rutgers has offered no evidence, or even argued, that the Pelcrete policy terms exclude coverage for excavation work. Indeed, while the policy does explicitly exclude coverage for a variety of types of occurrences, Rutgers has conceded that the policy does not specifically exclude excavation work. (See Johnson Dep. at 54-55) (Q: Is there anything in the policy, sir, that provides that the policy does not cover excavation work? A:

There's not a specific exclusion, no.); (Goldstein Dep. at 40)
("When I say the policy wouldn't cover [excavation work], I mean
because of the misrepresentation in the issuance of the policy,
not that there's anything in the policy that excludes
excavation."). Thus, there is no basis for concluding that there
was no coverage for the occurrence that caused Plaintiffs'
damages.

II.   Reservation of Rights

Rutgers argues that the reservation of rights in the final
paragraph of its February 16 disclaimer to Pelcrete precludes any
finding that it waived unasserted defenses. (See Def.'s Mem., at
2 ("Rutgers did timely apprise both Pelcrete and the Plaintiffs,
via their attorney, of its reservation of rights to add other
grounds upon which to disclaim coverage once sufficient
information w[as] provided to Rutgers. However, neither Pelcrete
nor the Plaintiffs ever provided Rutgers with any additional
information until Plaintiffs commenced the instant action.").)
Plaintiffs counter, citing the Second Circuit's decision in AMRO
Realty, 936 F.2d 1420, that Rutgers cannot rely on the "catch-all"
reservation in the letter because Rutgers had constructive
knowledge, when it issued the Pelcrete letter, of the grounds it
seeks to assert in this action. (See Pls.' Reply, at 23-24.)

AMRO Realty does not stand for the broad proposition that
"reservation of rights" provisions are irrelevant so long as the

36

facts giving rise to an affirmative defense were known to the insurer at the time it reserved its rights.  Indeed, the Second Circuit's determination in AMRO Realty, that an insurance company's reservation of rights in its disclaimer letter did not preclude a finding that it had waived an unasserted defense, was limited to the particular circumstances in that case and the language of the reservation of rights provision.[16]  AMRO Realty, 936 F.2d at 1433.  The AMRO Realty court further explained that "we do not address here the case where the insurer's disclaimer of coverage based on specified grounds is accompanied by an express and unequivocal statement that other grounds for disclaimer are reserved and not waived."  Id.

The question of whether an "express and unequivocal" reservation of rights serves to preserve unasserted defenses was addressed recently in Globecon Group v. Hartford Fire Ins. Co., 434 F.3d 165 (2d Cir. 2006).  In that case, the Second Circuit held that where an insurer "repeatedly and expressly reserved its rights in its communications" with a claimant, unasserted defenses were not waived.  See Globecon Group, 434 F.3d at 176.  Similarly,

---

[16] In AMRO Realty, the insurance company's disclaimer letter stated: "[w]e reserve our rights to rely on additional reasons for disclaimer should they become apparent in the future."  AMRO Realty, 936 F.2d at 1433 n. 13. The Second Circuit found that the reservation of rights "cannot be read to preclude waiver in the circumstances here, as the late-notice defense did not 'become apparent' after the [] complaint was filed, but rather was evident at the time [the insurance company] issued its disclaimer letter."  Id.

other courts in this circuit have found that an express reservation of rights precludes consideration of waiver. See Home Decor Furniture and Lighting, Inc. v. United Nat'l Group, No. 05 Civ. 02005 (ARR) (KAM), 2006 WL 3694554, at *6 (E.D.N.Y. Dec. 14, 2006) (insurer's letter states that it "reserves all of its rights at law or otherwise and does not waive any of the terms and conditions of the policy"); Steadfast Ins. Co., 277 F. Supp. 2d at 255 ("Steadfast reserved its right to disclaim coverage by issuing two reservation of rights letters notifying Stroock about its potential denial of coverage on the identical bases asserted in this litigation."); Mount Vernon Fire Ins. Co. v. William Monier Const. Co., No. 95 Civ. 0645 (DC), 1996 WL 447747, at *5 (S.D.N.Y. Aug. 7, 1996) (insurer did not waive unasserted defenses where letter stated that "we hereby reserve our rights to deny coverage predicated upon the above quoted provisions of our policy as well as any other rights or defenses which may come to our attention in the future"); Heiser v. Union Cent. Life Ins. Co., No. 94 Civ. 179 (FJS), 1995 WL 355612, at *5 (N.D.N.Y. June 12, 1995) ("Defendant's letter rejecting plaintiff's claim contained a reservation of defenses not raised. Thus, it cannot be said that defendant, by word or act, intended to abandon plaintiff's income misrepresentation as a ground for denial of claim or rescission.") (citing Lugo v. AIG Life Ins. Co., 852 F. Supp. 187, 192 (S.D.N.Y. 1994) (no waiver found where insurer stated in its disclaimer,

38

"issuance of [the] denial is not to be interpreted as a waiver of any and all other rights and defenses that [insurer] may have under the policy provisions, all of which are hereby expressly reserved.")).

AMRO Realty and its progeny instruct that in considering whether a disclaimer letter has preserved an insurer's right to later assert additional defenses, the focus must be on what exact rights the insurer has reserved. In this case, Rutgers wrote the following in its disclaimer letter to Pelcrete:

> [A]ny subject policy terms and/or conditions not referenced herein [are] not to be construed as a waiver of any of those terms and conditions.  In fact, by sending this letter the Company expressly reserves the right to rely on those terms and conditions in deciding whether or not other coverage is or is not afforded under the policy in the future.

(Pelcrete Ltr., at 5.)

Rutgers argues that it made the "reservation of rights to add other grounds upon which to disclaim coverage once sufficient information w[as] provided to Rutgers." (See Def.'s Mem., at 2.) Yet, unlike the reservation of rights provision in AMRO Realty, here there was no explicit reservation relating to the subsequent discovery of relevant information.  In any event, even if the Court was to accept Rutgers' view of the reservation clause, this case would present the precise situation that existed in AMRO Realty. The logical conclusion of Rutgers' argument is that the untimely notice defense asserted in its letter to Pelcrete was in

39

response to the information, albeit limited, that Rutgers had about the 2003 incident.  Any future defenses, presumably, would be asserted in response to additional information learned about the incident.  However, all of the defenses asserted in this action are based upon the same facts known to Rutgers when it wrote the disclaimer letter in February 2005.  Specifically, Rutgers knew in February 2005 that Plaintiffs had not provided notice of the 2003 incident until 2005, and that the incident arose out of excavation work by Pelcrete.

By their plain language, Rutgers' February 16 letters did not reserve the right to assert the defenses Rutgers asserts in this action.  In the February 16 letters to Plaintiffs and Pelcrete, there is no reservation of rights at all with regard to Plaintiffs' claims.

Moreover, Rutgers did not reserve its rights with respect to defenses unrelated to the terms and conditions of the policy. See Olin Corp., 2006 WL 509779, at *3 (where insurer reserved rights to specific grounds, while omitting mention of other defenses, insurer waived right to disclaim coverage on the unmentioned ground); Cf. Globecon Group, 434 F.3d at 169 (insurer "inserted language reserving its rights under the policy and under applicable law"); Home Decor Furniture and Lighting, 2006 WL 3694554, at *2 (insurer "reserves all of its rights at law or otherwise and does not waive any of the terms and conditions of

the policy"). There is no term or condition in the policy that required Plaintiffs, as injured parties, to provide prompt notice of their claims to Rutgers. Yet, that is a defense Rutgers now asserts.

What Rutgers reserved was its right to rely on the terms and conditions in the policy in future decisions on whether or not "other coverage is or is not afforded under the policy." Having just denied coverage to Pelcrete and Plaintiffs because of Pelcrete's failure to timely notify, Rutgers' reservation to decide "whether or not other coverage is or is not afforded under the policy in the future" must refer to other claims for coverage under the policy, not yet asserted.

In sum, the Court concludes that having disclaimed coverage for the occurrence involving Plaintiffs' cables because of Pelcrete's failure to timely notify Rutgers of the incident, Rutgers merely reserved the right to rely on other unasserted terms and conditions of the policy should Pelcrete make a subsequent claim for coverage. There is nothing in the language of the reservation of rights paragraph which remotely suggests that Rutgers was reserving the right to assert other legal or other policy defenses with respect to the claims already asserted by Plaintiffs.

III. Collateral Estoppel

Even if Rutgers had not waived the affirmative defenses of

41

untimely notice by Plaintiffs, material misrepresentation, and policy exclusion, the Court would nonetheless find that Rutgers is estopped from asserting those defenses in this action.

To establish a claim for equitable estoppel under New York law, a party must show: "(1) An act constituting a concealment of facts or a false misrepresentation;[17] (2) An intention or expectation that such acts will be relied upon; (3) Actual or constructive knowledge of the true facts by the wrongdoers; and (4) Reliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment." Gen. Elec. Capital Corp. v. Armadora, 37 F.3d 41, 45 (2d Cir. 1994); accord Mattis v. Zehng, 05 Civ. 2924 (DC), 2006 WL 3155843, at *4 (S.D.N.Y. Oct. 27, 2006).

Under New York law, an insurer's failure to provide a written disclaimer within a reasonable time may warrant estoppel. See Frazier v. Royal Ins. Co. of Am., 110 F. Supp. 2d 110, 115 (N.D.N.Y. 2000) (citing Mount Vernon Fire Ins. Co. v. NIBA Constr. Inc., 195 A.D.2d 425, 428, 600 N.Y.S.2d 936, 938 (1st Dep't 1993)

---

[17] Any misrepresentation by the insurer need not be intentional; "[i]t is sufficient that the party being estopped knew or had reason to believe that their acts or inaction might prejudice the party asserting the estoppel." Sterling v. Interlake Indus., Inc., 154 F.R.D. 579, 585 (E.D.N.Y. 1994); see also One Beacon Ins. Co. v. Old Williamsburg Candle Corp., 386 F. Supp. 2d 394, 401 (S.D.N.Y. 2005) ("An innocent misleading of another party may estop one from claiming the benefits of his or her deception.") (citing State Farm Ins. Co. v. Lofstad, 278 A.D.2d 224, 225, 717 N.Y.S.2d 287, 288 (2d Dep't 2000)).

(concurring opinion, Sullivan, J.) ("unreasonable delay by the insurer in disclaiming coverage will work an estoppel if prejudice to the insured or third-party claimant can be shown to have resulted from the delay")); Bluestein & Sander v. Chicago Ins. Co., No. 99 Civ. 11519 (RCC), 2001 WL 167707, at *3 (S.D.N.Y. 2001) ("Under New York common law, . . . an insurer may be estopped from asserting a valid defense to coverage if the insurer unreasonably delays in disclaiming coverage and the insured is prejudiced as a result of that delay."); Marino, 1992 WL 212184, at *8 ("[P]rinciples of estoppel can create coverage where the policy does not provide for coverage. But it is well settled that prejudice to the claimant must be shown.").

As to the first prong of the estoppel test, if Rutgers believed that no insurance contract existed between Rutgers and Pelcrete because of Pelcrete's alleged misrepresentations in its application for insurance, it was misleading for Rutgers to confirm to Plaintiffs that there was a policy in effect at the time of the incident, yet state that it would not cover Plaintiffs' losses solely because of Pelcrete's failure to provide prompt notice. Likewise, if excavation was an excluded activity under the policy, it was misleading for Rutgers to have acknowledged in the February 16 letter to Pelcrete that its insured had been doing excavation work when the cables were severed, but then have failed to disclaim on that basis.

Similarly, had Rutgers been considering any defenses related to Plaintiffs' actions, it was misleading to have sent Plaintiffs a letter specifically limiting the reasons for disclaimer to those "set forth in [the] denial letter [to Pelcrete] dated February 16, 2005." (See Plaintiffs' Ltr.) In sum, it is disingenuous for Rutgers to now suggest that upon learning from Plaintiffs of the incident and of Pelcrete's failure to appear in the underlying action, in February 2005, it was unaware that Plaintiffs would eventually seek to recover their losses from Rutgers, Pelcrete's insurer. Rutgers identified Plaintiffs as "claimant[s]" in the February 16 letter to Pelcrete, and Johnson testified that the purpose of the February 16 letters was to inform Plaintiffs that Rutgers would not be providing coverage for their losses. Rutgers may have had a number of valid grounds to disclaim as to Plaintiffs, yet, for whatever reason, Rutgers chose to disclaim solely on the basis of Pelcrete's failure to notify and then proceeded, for eighteen months, to remain silent as to any additional grounds for disclaimer.

As to the second "reliance" prong, Rutgers clearly intended for Plaintiffs to rely upon the representations in the February 16 letters; the February 16 letter to Plaintiffs specifically referred Plaintiffs to the Pelcrete letter for an explanation of the "reasons" that coverage was denied. The whole point of the February 16 letters was to inform Pelcrete and Plaintiffs that

they could not look to Rutgers for coverage.

As to the third prong, Rutgers had "actual or constructive" knowledge of the true facts. Rutgers had actual knowledge of what Pelcrete represented in its application for insurance, and constructive knowledge that those representations were likely to have been false. Likewise, it was aware the Pelcrete had been involved in excavation activities. And, Rutgers was aware that, for whatever reason, Plaintiffs' provided notice nineteen months after the occurrence. Yet, it made no reference to any of those facts in disclaiming coverage.

Finally, Plaintiffs have demonstrated that they have been prejudiced by Rutgers' failure to timely disclaim on the basis of Pelcrete's non-disclosure or misrepresentation. See Frazier, 110 F. Supp. 2d at 116 (prejudice found where insurer took over twenty-one months to disclaim to the injured parties). While, as Rutgers points out, the action against Pelcrete was already under way by the time it was notified of the incident by Plaintiffs, after receiving Rutgers' disclaimer in February 2005, Plaintiffs continued with their litigation for the next two years, in order to recover their losses. Plaintiffs (1) filed for a default judgment; (2) submitted proposed facts and a memorandum of law for an inquest on damages; (3) filed a successful motion for reconsideration; and (4) brought the instant action, which has involved extensive motion practice.

45

While, as discussed, Section 3420(d) of the Insurance Law does not apply to property damage claims, it is noteworthy that, in enacting that provision, the New York Legislature recognized that injured parties can be prejudiced by delayed responses from insurers when, unaware of the insurance companies' denials, they proceed with litigation. See U.S. Underwriters Ins. Co. v. Held Bros., Inc., No. 97 Civ. 5407 (HB), 1998 WL 355425, at *5 (S.D.N.Y. June 30, 1998) ("Section 3420(d) was also intended to prevent the situation where an injured party engaged in costly litigation against the insured, and then the insurer disclaimed coverage. . . . The insured and injured party are unable to protect their rights, or avoid costly litigation if they are not actually aware of the insurance company's denials."); Appell v. Liberty Mut. Ins. Co., 22 A.D.2d 906, 907, 255 N.Y.S.2d 545, 547 (2d Dep't 1964) ("The prejudice to the plaintiffs arose from the fact that, in reliance upon [the insurer's] failure to make a timely disclaimer of its liability, the plaintiffs proceeded with the labor and expense of prosecuting their unfruitful action against [], [the] assured."). Rutgers' present assertions that Pelcrete made material misrepresentations in applying for its policy, and that the policy excluded coverage for excavation activities, are based upon facts not only known to Rutgers at the time of its February 16 disclaimers, but exclusively known to Rutgers. Plaintiffs had no way of knowing, prior to discovery in this action, what Pelcrete represented in its application for

46

insurance, or the details of Rutgers' internal underwriting guidelines.

In sum, Rutgers' failure to advise Plaintiffs that they could not look to Rutgers for recovery of their losses, except on the ground that Pelcrete had failed to provide timely notice – a defense that had no applicability to Plaintiff's independent right to assert a claim for Pelcrete's coverage – "constitutes an injustice by which [Rutgers] is now estopped from denying coverage for the property damage caused by the negligence of the insured." Frazier, 110 F. Supp. 2d at 116.

## CONCLUSION

Because this Court concludes as a matter of law that the affirmative defenses raised by Rutgers have either been waived or lack merit, the Court grants Plaintiffs' motion for summary judgment, denies Rutgers' motion for summary judgment, and orders that Plaintiffs be awarded damages in the amount of the $1,000,000 limit of Pelcrete's insurance policy with Rutgers, in partial satisfaction of the default judgment entered against Pelcrete.[18]

---

[18] There is no need for the Court to address Plaintiffs' motions to strike various documents filed by Rutgers as there are no facts or legal arguments in the submissions necessary to the Court's determination of the merits of the parties' summary judgment motions. Nevertheless, notwithstanding defense counsel's assertion that "there [i]s no specific rule or practice regulating the length of any motion paper" (see Rutgers Memorandum of Law in Opposition to Plaintiffs' motion to Strike Rutgers' Reply Affirmation, filed May 21, 2007, at 2), Plaintiffs are correct that there is a ten-page limit on reply memoranda, (see Individual Practices of the Hon. Theodore H. Katz, dated July 14, 2003). Moreover, to the extent Defendant seeks to raise

---

new legal arguments in its Reply Affirmation, such arguments need
not be addressed.  <u>See</u> <u>Frank v. United States</u>, 78 F.3d 815, 833
(2d Cir. 1996)("[Litigant] generally cannot resurrect an argument
omitted in its main brief by raising it for the first time in a
reply brief"); <u>accord</u> <u>Salumbides v. United States</u>, No. 05 Civ.
7847 (RMB), 2007 WL 430425, at *6 (S.D.N.Y.).

This Opinion resolves all pending motions.   The Clerk is directed to enter judgment for Plaintiffs.

SO ORDERED.

Theodore H. Katz
United States Magistrate Judge

Dated:      August 13, 2007
            New York, New York

---

new legal arguments in its Reply Affirmation, such arguments need not be addressed.   See Frank v. United States, 78 F.3d 815, 833 (2d Cir. 1996)("[Litigant] generally cannot resurrect an argument omitted in its main brief by raising it for the first time in a reply brief"); accord Salumbides v. United States, No. 05 Civ. 7847 (RMB), 2007 WL 430425, at *6 (S.D.N.Y.).

48