UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------X

MCI LLC, d/b/a Verizon Business, :
and Sprint Communications       :
Company LP,                     :
                                :
            Plaintiffs,         :
                                :    06 Civ. 4412 (THK)
                                :
                                :
    -against-                   :
                                :    **MEMORANDUM OPINION AND ORDER**
                                :
                                :
RUTGERS CASUALTY INSURANCE       :
    COMPANY,                    :
                                :
            Defendant.          :
                                :
------------------------------X

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

On August 13, 2007, this Court entered a Memorandum Opinion and Order ("Opinion"), which granted Plaintiffs MCI LLC, d/b/a Verizon Business, and Sprint Communications Company, L.P.'s Motion for Summary Judgment and denied Defendant Rutgers Casualty Insurance Company's ("Rutgers") Motion for Summary Judgment.[1] <u>See</u> <u>MCI LLC v. Rutgers Cas. Ins. Co.</u>, No. 06 Civ. 4412 (THK), 2006 WL 2325867 (S.D.N.Y. Aug. 13, 2007). On August 14, 2007, judgment was entered, on behalf of Plaintiffs and against Rutgers, in the amount of $1,000,000 ("Judgment"). Presently before the Court is Plaintiffs' Motion to Amend Judgment To Add Pre-Judgment Interest ("Motion to Amend"), pursuant to Federal Rule of Civil Procedure 59(e) ("Rule 59(e)"), in which Plaintiffs request that the Court

---

[1] The parties consented to trial before this Court pursuant to 28 U.S.C. § 636(c).

amend the Judgment to add $486,625.88 in pre-judgment interest.[2]

For the following reasons, Plaintiffs' Motion To Amend is denied.

**DISCUSSION**

I. <u>Factual Background</u>

The Opinion contains a detailed recitation of the facts, with which the Court assumes familiarity. The facts set forth herein, citations for which can be found in the Opinion, are those that are germane to Plaintiffs' Motion to Amend.

In 2002, Rutgers issued Commercial General Liability Insurance Policy No. SKP 3103105 10 to Pelcrete Construction, Inc. ("Pelcrete"). The policy was effective from December 9, 2002 through December 9, 2003, and provided coverage of $1,000,000 per occurrence. On July 2, 2003, Pelcrete severed two underground fiber-optic telecommunication cables while doing excavation work in the Bronx, New York. Pelcrete never notified Rutgers of the occurrence. On July 3, 2003, Plaintiffs, the owner and lessee of the cables respectively, attempted to obtain information concerning, among other things, the identity of Pelcrete's insurer. Pelcrete refused to provide this information.

_____

[2] Rutgers filed a document entitled Memorandum Of Law In Support Of Its Cross-Motion To Deny Plaintiffs' Motion To Amend The Judgment To Add Pre-Judgment Interest. Although labeled as a "Cross-Motion," Rutgers's filing is nothing more than a response to Plaintiff's Motion to Amend. Accordingly, it will be cited herein as "Response."

Plaintiffs sued Pelcrete on September 15, 2004, alleging trespass and negligence ("Pelcrete Suit").  On January 5, 2005, Plaintiffs issued a subpoena to the New York City Housing Authority ("NYCHA") seeking, <u>inter alia</u>, documents relating to any insurance policies issued to Pelcrete for the work on Webster Avenue in the Bronx "on or around May 2002 through August 2003."  On January 24, 2005, the NYCHA provided documents which included information indicating that Rutgers was Pelcrete's insurer.

On January 27, 2005, Plaintiffs' counsel had a telephone conversation with a representative of The Heffner Agency, Rutgers' insurance agent at that time.  In that conversation, Plaintiffs' counsel informed the agent of the July 2, 2003 occurrence and of the then-pending claims against Pelcrete.  On February 10, 2005, Plaintiffs provided written notice to Heffner and Rutgers of the occurrence and of the pendency of the Pelcrete Suit.  Included in that notice were copies of the complaint and other pertinent pleadings and orders from the Pelcrete Suit.

In separate letters to Pelcrete and to Plaintiffs' counsel, both dated February 16, 2005, Rutgers acknowledged receipt of the notice advising of the pending claims against Pelcrete.  In its letter to Plaintiffs, Rutgers stated that, pursuant to New York Insurance Law Section 3420(d), Rutgers was denying "coverage to Pelcrete Construction, Inc. as well as any and all insured under this policy, on the grounds that coverage is excluded for this loss

3

for the reasons set forth [in the February 16 letter to Pelcrete]."
A copy of the February 16 letter to Pelcrete was attached to
Plaintiffs' letter, and it explained that Rutgers was "constrained
to deny coverage" based on a breach of the Conditions Section of
the Policy, which required Pelcrete to "see to it that [Rutgers
was] notified as soon as practicable of an 'occurrence' or an
offense, which may result in a claim." (See Response at Ex. B, p.
4.)

In the Pelcrete Suit, Pelcrete ultimately failed to respond to
the complaint and Rutgers never defended Pelcrete. On August 18,
2005, the court (Mukasey, J.) granted Plaintiffs' motion for entry
of a default judgment against Pelcrete and, on May 8, 2006, the
court awarded Verizon Business $1,421,648.86, and Sprint
$591,615.88, as well as prejudgment and post-judgment interest.

On May 10, 2006, pursuant to New York Insurance Law §
3420(a)(2), Plaintiffs provided written notice of the Judgment to
Pelcrete and to Rutgers. After the passage of thirty days,
Plaintiffs filed this action against Rutgers seeking judgment in
the amount of $1,000,000, the limit of liability in Pelcrete's
policy with Rutgers.

In its answer to Plaintiff's complaint, Rutgers asserted
several affirmative defenses. In their Motion for Summary
Judgment, however, Plaintiffs contended that Rutgers had waived its
defenses because Rutgers' February 16, 2005 letters to Pelcrete and

to Plaintiffs disclaimed coverage solely only on the ground of untimely notice by Pelcrete, a ground which does not apply to Plaintiffs. Plaintiffs also argued that if the waiver doctrine did not apply, Rutgers should be estopped from asserting any other defenses. In its Cross-Motion for Summary Judgment, Rutgers countered that the waiver doctrine is inapplicable because it had no duty to provide a written disclaimer to Plaintiffs, and that, in any event, the February 16, 2005 letters clearly disclaimed coverage to both Pelcrete and Plaintiffs on the ground of untimely notice. Rutgers also contended that when it issued the policy to Pelcrete it relied on false material facts given by Pelcrete in its application for insurance, which vitiated the policy <u>ab</u> <u>initio</u>, thus making irrelevant whether Rutgers issued a timely disclaimer or whether all of the grounds for disclaimer were initially asserted. Rutgers further argued that the Pelcrete policy does not cover excavation work, and that New York law does not require a carrier to disclaim if the loss falls outside the scope of coverage.

In the Opinion that followed, this Court held that Rutgers had waived all of its defenses to Plaintiffs' claims by virtue of the fact that it had only disclaimed coverage on the basis of Pelcrete's untimely notice – not Plaintiffs' notice – and that, in all events, it was estopped from asserting any other defenses. This Court also rejected Rutgers' arguments that the Pelcrete

policy did not cover excavation work and that its reservation of rights allowed it to assert defenses other than the lone defense contained in its February 16, 2005 disclaimer letter.  This Court, therefore, granted Plaintiffs' Motion for Summary Judgment, denied Rutgers' Motion for Summary Judgment, and awarded Plaintiffs damages in "the amount of the $1,000,000 limit of Pelcrete's insurance policy with Rutgers, in partial satisfaction of the default judgment entered against Pelcrete."  MCI LLC, 2006 WL 2325867 at *18.

II.  Plaintiffs' Motion to Amend: Summary of Arguments

    On August 24, 2007, Plaintiffs filed their Motion to Amend, in which they ask this Court to add approximately $500,000 of pre-judgment interest to the Judgment they obtained against Rutgers. The issues presented by Plaintiffs' Motion to Amend are, ultimately, rather narrow.

    Plaintiffs bring the Motion to Amend under Rule 59(e) and, because, in this diversity action, state law determines whether and to what extent Plaintiffs are entitled to pre-judgment interest, under New York Civil Practice Law & Rules ("NYCPLR") 5001(a), which provides for pre-judgment interest upon a breach of contract. Rutgers does not challenge Plaintiffs' ability to bring the motion pursuant to Rule 59(e), and admits that NYCPLR 5001(a) "authorizes an award of pre-judgment interest 'upon a sum awarded because of a breach of performance of the contract.'"  (Response at 2 (quoting

<u>Royal Indemnity Co. v. Providence Washington Ins. Co.</u>, 966 F. Supp.

149 (N.D.N.Y. 1997).)  Rutgers, however, contends that "such an

award is contingent upon the terms and conditions of the policy of

insurance."  (<u>Id.</u> (quoting <u>Mann v. Gulf Ins., Co.</u>, 300 A.D.2d 452,

751 N.Y.S.2d 557 (2002).)  And, still in agreement with each other,

Plaintiffs do not dispute that proposition.

The parties, however, disagree on the applicability of the

specific provision in the Policy which authorizes pre-judgment

interest in certain situations.  The provision states, in pertinent

part:

> 1.  We will pay, with respect to any claim that we
>     investigate or settle, or any "suit" against an insured
>     we defend:
>
>                    .    .    .
>
>     f.   Prejudgment interest awarded against the insured on
>          that part of the judgment we pay.  If we make an
>          offer to pay the applicable limit of insurance, we
>          will not pay any prejudgment interest based on that
>          period of time after the offer.
>
>     g.   All interest on the full amount of any judgment
>          that accrues after entry of judgment and before we
>          have paid, offered to pay, or deposited in court
>          the part of the judgment that is within the
>          applicable limit of insurance.

(Policy, attached as Exhibit ("Ex.") 1 to Motion to Amend, at 10-11

"Supplementary Payments - Coverages A and B.")

In their Motion to Amend, Plaintiffs focus exclusively on the

language contained in subparagraphs (f) and (g), with no mention of

the language contained in the preamble paragraph (1) ("Preamble").

Plaintiffs claim that, based on the specific language contained in the subparagraphs, they are entitled to (a) pre-judgment interest on $1,000,000 (the portion of the Pelcrete judgment that did not exceed the policy limit), from July 2, 2003 (date of the incident) until May 8, 2006 (entry of judgment against Pelcrete), at 9% per annum, totaling $256,853.00, and (b) all interest on $2,013,264.74 (full amount of the Pelcrete judgment) from May 8, 2006 until August 14, 2007 (entry of judgment against Rutgers), at 9% per annum, totaling $229,772.88. The total amount of pre-judgment interest to which Plaintiffs claim they are entitled is $486,625.88.

Rutgers, on the other hand, draws the Court's attention to the Preamble in the Policy. Rutgers argues that because it never "investigate[d]," "settle[d]," or "defend[ed]" any portion of Plaintiffs' claim against Pelcrete, Plaintiffs are not entitled to pre-judgment interest because an express condition precedent to the payment of pre-judgment interest has not been met. Rutgers also contends that, due to the fact that Pelcrete never apprised Rutgers of the occurrence, and Plaintiffs did not notify Rutgers of the occurrence until sixteen months after the incident, Rutgers "never had the opportunity to investigate or settle the claim" and that, by the time Rutgers was notified, "[i]n effect, there was nothing

left to investigate." (Response, at 3-4.)[3]

Plaintiffs' responses to these arguments are the crux of the dispute. Although Plaintiffs appear to admit, or at least do not dispute, that the Preamble is a condition precedent to their ability to obtain pre-judgment interest under subparagraphs (f) and (g), Plaintiffs make two arguments as to why they are still entitled to the relief they seek. Plaintiffs argue that (1) Rutgers did, in fact, "investigate" the claim before sending the February 16, 2005 disclaimer letter[4], or, alternatively, (2) even if Rutgers did not investigate the claim, its failure to do so was a breach of the covenant of good faith and fair dealing, and Rutgers cannot "rely on the failure of a condition precedent where [it] has frustrated or prevented the occurrence of the condition." (Pls.' Reply, at 3-4.)

Rutgers, who got the last word by labeling its response to the motion as a "Cross-Motion to Deny Plaintiff's Motion to Amend,"

_____

[3] In the alternative, Rutgers also argues that under no circumstances are Plaintiffs entitled to interest on the $2,013,264.74 judgment against Pelcrete. Even if Plaintiffs were entitled to some pre-judgment interest, Rutgers argues that Plaintiffs would be limited to interest on the $1 million judgment against Rutgers. The Court need only address this issue if it finds that Plaintiffs are entitled to some amount of pre-judgment interest.

[4] Plaintiffs concede that Rutgers did not settle or defend their claims against Pelcrete. (Plaintiffs' Reply in Support of Plaintiffs' Motion To Amend Judgment To Add Pre-Judgment Interest And Response To Defendant's Cross Motion For Order Denying Plaintiff's Motion To Amend Judgment ("Pls.' Reply"), at 2 n.1.)

argues that it did not conduct an investigation of the claim because it believed that it had a valid defense to coverage, based on the lack of notice by Pelcrete and untimely notice by Plaintiffs. (<u>See</u> Reply Memorandum In Support Of Rutgers Casualty Insurance Company's Cross-Motion Denying Plaintiff's Motion To Amend Judgment To Add Pre-Judgment Interest ("Def.'s Sur-Reply"), at 1-4.) Rutgers also denies that its failure to investigate was a breach of the covenant of good faith and fair dealing because, among other things, it never made any implied promise to investigate a claim, instead merely reserving the right to do so if it believed necessary. (<u>See</u> <u>id.</u> at 5.)

Consequently, the issues before the Court are twofold: (1) did Rutgers investigate the claim so as to trigger its obligations under the pre-judgment interest provisions of the Policy, and (2) if Rutgers did not investigate the claim, was its failure to do so a breach of the covenant of good faith and fair dealing such that Rutgers cannot rely on the failure of a condition precedent to avoid paying the pre-judgment interest?

Before turning to those questions, however, the Court will briefly address whether Plaintiffs' Motion to Amend is proper under Rule 59(e).

III. <u>Motions to Amend Under Rule 59(e)</u>

    A. <u>Legal Standard</u>

Rule 59(e) states: "Any motion to alter or amend a judgment

shall be filed no later than 10 days after entry of judgment."
Fed. R. Civ. P. 59(e). "Although Rule 59(e) does not prescribe
specific grounds for granting a motion to alter or amend an
otherwise final judgment . . . district courts may alter or amend
a judgment to correct a clear error of law or prevent manifest
injustice." Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d
Cir. 2004) (internal quotation marks and string citation omitted);
see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d
1245, 1255 (2d Cir. 1992) (major grounds for reconsideration are
"an intervening change of controlling law, the availability of new
evidence, or the need to correct a clear error or prevent manifest
injustice"). A motion under Rule 59(e), however, may not be used
to "raise arguments . . . that could have been raised prior to the
entry of judgment." *Arthur R. Miller, et al., Fed. Practice &
Procedure*, § 2810.1, at 127-28 (2d ed. 1995); accord Shrader v. CSX
Transp., Inc., 70 F.3d 255 (2d Cir. 1995); In re Prince, 85 F.3d
314, 324 (7th Cir. 1996); In re Martin, Nos. 04-17210, 1:06 Civ.
1311, 2007 WL 201103 (N.D.N.Y Jan. 23, 2007) ("a motion to amend or
alter a final judgment [under Rule 59(e)] cannot be used to raise
arguments which could and should have been made before the trial
court entered final judgment").

B.    Application

Although Rutgers neglected to address the issue of whether
Plaintiffs are entitled to seek relief under Rule 59(e), the Court

believes that Plaintiffs have failed to meet the Second Circuit's demanding standards for such relief. As an initial matter, the pre-judgment interest Plaintiffs now seek was never put in issue in this case. Indeed, despite filing two motions for summary judgment, and multiple supporting briefs, Plaintiffs never specifically requested pre-judgment interest and only mentioned interest generally in their prayer for relief, which requests a judgment "in the amount of $1,000,000.00, along with interest thereon by law, all costs of this action, and such other and further relief as the Court deems appropriate." (Pl.s' Motion for Summary Judgment, at 19; see also Plaintiffs' Amended Complaint at 6.) Plaintiffs never (1) identified a specific contractual provision in the Policy which they believed entitled them to pre-judgment interest, or (2) submitted argument to the Court as to why pre-judgment interest should be awarded in this case.

In their Motion to Amend, Plaintiffs do not explain these failures; instead they merely assert that they are timely seeking an amendment to the judgment under Rule 59(e). But this Court is unwilling to accept the premise that there was a "clear error of law" or "manifest injustice" in not granting Plaintiffs pre-judgment interest in light of the fact that Plaintiffs paid the matter no attention in their numerous submissions to this Court. Indeed, it is surely unreasonable for Plaintiffs to expect the Court, on its own initiative and with no request or assistance from

Plaintiffs, to (1) determine whether there was a provision in the Policy that could arguably entitle Plaintiffs to pre-judgment interest, (2) conduct all of the necessary legal research on the provision, and (3) reach a decision on the issue, without the benefit of argument from either party.

Moreover, Plaintiffs are now, in part, seeking pre-judgment interest on the judgment they received in their underlying dispute with Pelcrete, which was entered seventeen months ago – before they even filed the instant action. Thus, the prejudgment interest Plaintiff now seeks is part of the substantive relief they claim entitlement to, rather than merely a pro forma award of prejudgment interest as a matter of law. Yet, the first time Plaintiffs ever expressly requested interest on the Pelcrete Judgment was in their Motion to Amend the Judgment in this case. Thus, Plaintiffs either overlooked the issue of pre-judgment interest or made a conscious decision not to specifically address it in this action. In all events, however, the Court perceives no "clear error" with the Judgment, and an award of pre-judgment interest is not now required to avoid "manifest injustice." Consequently, this Court does not believe that Plaintiffs have met the standard to request an amendment to the Judgment under Rule 59(e).

Although the Court need delve no further, the Court will also explain why Plaintiffs are not entitled to pre-judgment interest under the Policy.

IV.  <u>Did Rutgers Investigate The Claim?</u>

The initial question presented is whether Rutgers investigated the claim.  Plaintiffs argue, correctly, that because the Policy does not define the word investigate, it must be "construed according to the plain and ordinary meaning of that term which comports with the interpretation given by the average person." (Pls.' Reply, at 2.)  Plaintiffs then, somewhat conspicuously, fail to provide a plain and ordinary meaning for the word investigate.  Plaintiffs also argue, correctly, that, because Rutgers drafted the Policy, to the extent that there is any ambiguity in the word investigate, it should be construed against Rutgers.  (<u>See</u> Pls.' Reply at 2-3; <u>see e.g.</u>, <u>Palmeiri v. Allstate Ins. Co.</u>, 445 F.3d 179, 191 (2d. Cir. 2006).)  Rutgers, for its part, does not contest these legal rules; instead, it merely asserts that under no circumstances can the actions it took be considered an investigation. (<u>See</u> Def.'s Sur-Reply, at 1-4.)

Dictionary definitions of the word investigate include: "[t]o inquire into (a matter) systematically" or "to make an official inquiry" (*Black's Law Dictionary* 844 (8th ed. 2004)); "to observe or study by close examination and systematic inquiry" (*Merriam-Webster Online Dictionary*. 2004. http://www.merriam-webster.com (2 Jan. 2004).); "to examine a crime, problem, statement, etc. carefully, especially to discover the truth" (*Cambridge Dictionary Online*. 2004. http://www.dictionary.cambridge.org.).

14

As support for their argument that Rutgers did, in fact, conduct an investigation of the claim, Plaintiffs state that (1) on January 27, 2005, Plaintiffs' counsel called Rutgers' agent, The Heffner Agency ("Heffner") and informed it of the July 2, 2003 occurrence and the then-pending claims against Pelcrete, (2) on February 10, 2005, Plaintiffs provided written notice of the occurrence and then-pending claims, including copies of the complaint, other pertinent pleadings, and orders from the Pelcrete Suit, to Heffner and Rutgers, and (3) on February 16, 2005, Rutgers sent letters to Pelcrete and Plaintiffs in which it repeated certain "critical" allegations made by Plaintiffs in the Pelcrete Suit. (See Pls.' Reply, at 3.)

Rutgers responds with deposition testimony from the author of the February 16, 2005 letter, David Johnson ("Johnson"), in which he testified that he never made an attempt to contact Pelcrete either before or after writing the letter; he did not recall having a discussion with anyone from Heffner before sending the letter; and he made no attempt to contact Plaintiffs before sending the letter. (See Def.'s Sur-Reply, at 2.) And, as the parties are well aware, the Court has ruled that the only reason Rutgers provided in the February 16, 2005 disclaimer letter was late notice by Pelcrete. (See Opinion, at 44.) This Court is hard-pressed to find that these actions, or lack thereof, constitute an investigation, as that word is commonly defined.

Rutgers goes on to argue that, due to the fact that it was not notified of the occurrence until some sixteen months after it took place, it had a valid defense to coverage and, in all events, "could not have investigated the claim." (Id. at 3.) Moreover, although Rutgers does not so argue, the Court notes that the February 16, 2005 letter, which was sent a mere six days after Rutgers received written notice of the claim from Plaintiffs, does not evidence any independent inquiry of the claim. Instead, the Letter simply restates some of the allegations in the Pelcrete Complaint and Plaintiffs' demand letter. (See Response, Ex. B.) This does not constitute an "investigation" of the claim. See, e.g., In re WorldCom, Inc. Sec. Litig., 346 F. Supp. 2d 628, 678 (S.D.N.Y. 2004)("the word 'investigation' connotes a 'thorough' or 'searching inquiry' . . .[or] 'to inquire and examine into with systematic attention to detail and relationship'").

Consequently, the Court finds Rutgers' argument to be the more persuasive of the two and, accordingly, finds that Rutgers did not "investigate" the claim, as that term is understood in its plain and ordinary meaning.

III. Did Rutgers Breach The Covenant Of Good
Faith And Fair Dealing By Not Investigating The Claim?

The only remaining question, therefore, is whether Plaintiffs' alternative argument is correct – that Rutgers' failure to conduct an investigation constitutes a breach of the covenant of good faith and fair dealing.

A. _Legal Standard_

Under New York law, "an insurer does not breach its duty of good faith when it makes a mistake in judgment or even when it behaves negligently." _Greenidge v. Allstate Ins. Co._, 446 F.3d 356, 362 (2d Cir. 2006). Consequently, the implied covenant of good faith and fair dealing "only applies when an implied promise is so interwoven into the contract 'as to be necessary for effectuation of the purposes of the contract.'" _Thyroff v. Nationwide Mut. Ins. Co._, 460 F.3d 400, 407 (2d Cir. 2006) (quoting _M/A-Com Sec. Corp. v. Galesi_, 904 F.2d 134, 136 (2d Cir. 1990)). Although the covenant is at issue when a party's action directly violates an "obligation that may be presumed to have been intended by the parties," it cannot be applied to "undermine a party's general right to act in its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." _Id._ at 407-08.

Plaintiffs cite two cases for the proposition that "the covenant of good faith and fair dealing implied in every insurance policy includes an insurer's duty to investigate any covered claims." (Pls.' Reply, at 4 (citing _New York Univ. v. Cont'l Ins. Co._, 662 N.E.2d 763, 769, 87 N.Y.2d 308 (N.Y. 1995) and _Gross v. Empire Healthchoice Assurance, Inc._, No. 602848-2005, 2007 WL 2066390 at *3 (N.Y. Sup. July 18, 2007).) Neither of these two cases directly support Plaintiffs' characterization of the law.

In the <u>New York University</u> case, the plaintiff alleged that the defendant conducted a "sham" investigation into the plaintiff's claim, and subsequently denied it in bad faith in order to perpetuate an "allegedly fraudulent scheme." 87 N.Y.2d at 319, 662 N.E.2d at 766, 769. The court dismissed the plaintiff's claim for breach of the covenant of good faith and fair dealing as duplicative of the breach of contract claim but stated, in dicta, that "a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims." <u>Id.</u> at 769. This passing statement does not support Plaintiffs' argument in the case at bar – that the duty of good faith and fair dealing always requires an insurer to investigate a claim. Unlike Rutgers, who conducted no investigation because it believed that the claim was facially defective due to lack of timely notice, and, in fact, argues that the late notice prevented it from investigating the claim, the defendant in <u>New York University</u> allegedly conducted a sham investigation in bad faith. To the extent that the dicta in <u>New York University</u> sets forth a legal rule, which is doubtful, the rule is only that if an insurer elects to conduct an investigation, it must do so in good faith. This rule, however, does not cast an air of wrongdoing or bad faith over Rutgers' decision not to conduct any investigation at all because it believed it had an adequate ground to disclaim coverage based on information contained on the face of the claim.

Reliance on Gross is similarly misplaced. The plaintiff in Gross alleged a breach of the covenant of good faith and fair dealing on four different grounds, none of which related to a failure to investigate. See 2007 WL 2066390, at *1. Citing the dicta from New York University, the court held that the covenant "encompasses an insurer's duty 'to investigate in good faith and pay covered claims.'" (Id. at *3). But the court did not hold, as Plaintiffs here assert, that the covenant requires an investigation into every claim. Gross, like New York University, is, therefore, inapposite.

The specific issue Plaintiffs overlook is the one presented by this case – if an insurer receives notice of a claim, which it believes to be facially defective based on late notice or some other ground, can it make a good faith business judgment not to expend resources conducting an investigation of the claim? There is ample authority indicating that this question should be answered in the affirmative.

For example, in Allendale Mut. Ins. Co. v. Excess Ins. Co., 992 F. Supp. 278, 285 (S.D.N.Y. 1998), the plaintiff made an argument very similar to the one advanced by Plaintiffs here – that the "defendants breached the second contract's implied covenant of good faith and fair dealing by refusing payment of [the plaintiff's] claim without making a reasonable investigation of whether such payment was owed." Id. at 285. The court rejected

that argument because, at the time of the declination letter, the defendants already knew that the plaintiff had materially failed to disclose recommendations from a survey report.  See id. at 285. The court held that the defendants' decision not to investigate further was, therefore, "not only reasonable, but fully warranted." Id.[5]

A similar result was reached in Philadelphia Parking Auth. v. Fed. Ins. Co., 385 F. Supp. 2d 280 (S.D.N.Y. 2005).  In that case, like this one, the plaintiff alleged that the defendant, in bad faith, failed to adequately investigate the plaintiff's claim before denying coverage.  The court rejected that argument as follows:

> Defendant denied coverage because the facts as stated by the Plaintiff simply did not invoke coverage under the plain language of the policy.  Defendant did not question any facts asserted by Plaintiff, but rather accepted Plaintiff's claims as true for purpose of analyzing coverage.  In addition, Defendant in its letter denying coverage, informed Plaintiff: 'If you believe we have overlooked any pertinent facts, or if there is any

---

[5] Although the court in Allendale did not explain how the defendants discovered that the plaintiff failed to disclose the survey report, it stated that "defendants' investigation was reasonable" because defendants already had that information when it denied coverage. (Id. at 285.) This Court, however, does not read Allendale to suggest that the covenant was not breached because the defendants conducted some level of investigation. This Court reads Allendale to stand for the proposition that if an insurer is in possession of information which it believes to be a sound basis for denying coverage at the time of the declination letter, it can, in good faith, decide not to conduct further investigation, or any investigation, into the claim.

additional information you wish us to consider in connection with this claim, we ask that you kindly bring it to our attention as soon as possible.'[6]

Since Defendant accepted all of Plaintiff's claims as true and correctly denied coverage based on the language of the policy, investigation into the facts was unnecessary. It is unclear what Plaintiff believes Defendant should have investigated before denying Plaintiff's claim. Unless Plaintiff omitted from its initial request information that would have brought its claims within the policy's coverage (in which case Plaintiff should have included such information in Plaintiff's request for reconsideration), no investigation would have changed the fact that Plaintiff's property insurance policy did not cover the losses Plaintiff sustained on September 11, 2001. Thus, Defendant's failure to investigate Plaintiff's claim before denying coverage was not in bad faith.

Id. at 291 (internal citations omitted).[7]  See also Timberlake Constr. Co. v. U.S. Fid. & Guar. Co., 71 F.3d 335, 345 (10th Cir. 1995) (allegation that insurer failed to investigate in good faith rejected where insurer denied coverage based on statements from insured, "on whose statements it was entitled to rely"); Paulfrey v. Blue Chip Stamps, 150 Cal. App. 3d 187, 199 (2d Dist. 1983) ("It

---

[6] Rutgers' February 16, 2005 Letter contains similar language: "If you have any additional information that has not been provided which indicates that the claim brought in this instance is not excluded by the policy language referenced above, then I would respectfully request that you immediately forward such information to me as soon as possible." (Response, Ex. B.)

[7] Although Philadelphia Parking applied Pennsylvania law, this Court discerns no significant difference between Pennsylvania law and New York law on the duty to investigate.

would seem reasonable that any responsibility to investigate on an insurer's part would not arise unless and until the threshold issue as to whether a claim was filed, or a good faith effort to comply with claims procedure was made, has been determined.").

B.  <u>Application</u>

These cases clearly suggest that Rutgers could have made a good faith decision to deny coverage on the ground of untimely notice from Pelcrete, and not conduct an investigation into the underlying claim.  Plaintiffs' argument to the contrary is, ultimately, unconvincing.  Plaintiffs essentially argue, without any factual support, and, indeed, in contravention of the facts, that Rutgers failed to conduct a good faith investigation into the claim so that it could avoid its obligation to pay pre-judgment interest on any judgment that was ultimately entered against it. The Opinion issued by this Court held that Rutgers's disclaimer as to Plaintiffs, on grounds of untimely notice by Pelcrete, was ineffective.  (Opinion, at 17.)  This Court also held that, because Rutgers relied exclusively on Pelcrete's untimely notice to disclaim coverage in the February 16, 2005 Letter, it  waived its right to assert other affirmative defenses, or, alternatively, was collaterally estopped from asserting them, and that Rutgers' reservation of rights was ineffective.   Nowhere in the Opinion, however, did the Court find, or even suggest, that Rutgers acted in bad faith, or disclaimed solely on the grounds of Pelcrete's

notice, in order to gain some kind of tactical advantage at Plaintiffs' expense.

To the contrary, Rutgers seemed to be under the genuine, albeit badly mistaken, view that its disclaimer on the basis of Pelcrete's failure to give notice was effective. Plaintiff's offer no support for the counterintuitive argument that Rutgers did not investigate the claim solely, or even partially, to avoid paying pre-judgment interest on a claim for which it believed it was not responsible. In light of the foregoing, this Court is unwilling to conclude that Rutgers acted in bad faith when it issued its disclaimer letter and made a decision not to investigate the claim further.[8] Accordingly, the Court finds that Rutgers did not breach the covenant of good faith and fair dealing when it elected not to investigate the claim in this matter.

C.  <u>Frustration Of A Condition Precedent</u>

Employing a slightly different tact, Plaintiffs also argue that Rutgers cannot benefit from its failure to investigate because a party cannot benefit from its own prevention of a condition precedent. Specifically, Plaintiffs argue that "the covenant of good faith and fair dealing implied in every contract also requires

---

[8] Indeed, the Court expressed uncertainty as to why Rutgers did not disclaim on other grounds: "Rutgers may have had a number of valid grounds to disclaim as to Plaintiffs, yet, for whatever reason, Rutgers chose to disclaim solely on the basis of Pelcrete's failure to notify and then proceeded, for eighteen months, to remain silent as to any additional grounds for disclaimer." (Opinion, at 44.)

a promissor to reasonably facilitate the occurrence of any conditions precedent by either refraining from conduct which would prevent or hinder the occurrence or by taking positive action to cause the occurrence of that condition." (Reply, at 4 (citing Cauff, Lippman & Co. v. Apogee Finance Group, Inc., 807 F. Supp., 1007, 1022 (S.D.N.Y. 1992).)

Although Cauff contains that exact statement, with a few superficial modifications added by Plaintiffs' counsel, Cauff goes on to state, in the very next sentence, that a "party's failure to act in *good faith* so as to facilitate the occurrence of a condition precedent requires the condition to be deemed satisfied or excused, rendering the contract enforceable." 807 F. Supp. at 1022 (emphasis added). Indeed, Cauff analogizes the rule to the "prevention doctrine" rule, which "excuses a condition precedent when a party *wrongfully prevents* that condition from occurring." Id. (emphasis added). Thus, in their recitation of the rule, Plaintiffs omit the language which forms the cornerstone of these doctrines, i.e., that a party must prevent the occurrence of the condition in bad faith or wrongfully.[9] For the reasons set forth

---

[9] The other cases which Plaintiffs cite contain similar language. See Lomaglio Assoc., Inc. v. LBK Mktg. Corp., 892 F. Supp. 89, 93 (S.D.N.Y. 1995) ("the prevention doctrine will operate to excuse the condition precedent which was *wrongfully prevented* from occurring") (emphasis added); Kooleraire Serv. and Installation Corp. v. Bd. of Educ. of the City of New York, 268 N.E.2d 782, 784, 28 N.Y.2d 101 (1971)(recognizing that frustration of a condition precedent can be "justified by the conduct of the other party").

above, the Court cannot agree that Rutgers' failure to conduct an investigation was a decision that it made in bad faith.[10]

## CONCLUSION

Because this Court concludes that Rutgers did not investigate the claim, and that the decision not to do so was not a breach of the covenant of good faith and fair dealing, the Court finds that a condition precedent to the payment of pre-judgment interest was not satisfied and, accordingly, denies Plaintiffs' Motion To Amend Judgment To Add Pre-Judgment Interest.

This Memorandum Opinion and Order resolves: (1) Plaintiff's Motion to Amend Judgment To Add Pre-Judgment Interest (Docket Entry No. 92); and (2) Defendant's "Cross-Motion" To Deny Plaintiff's Motion To Amend Judgment To Add Pre-Judgment Interest (Docket Entry No. 95).

SO ORDERED.

Theodore H. Katz
United States Magistrate Judge

Dated:     December 4, 2007
           New York, New York

---

[10] In light of the holding that Plaintiffs are not entitled to pre-judgment interest, the Court will not address the second dispute between the parties over how any such interest would have been calculated.